**HOGAN LOVELLS US LLP**
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hoganlovells.com
sneha.banerjee@hoganlovells.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hoganlovells.com

*Attorneys for Defendant BeenVerified, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SHERIF SHERIF, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BEENVERIFIED, LLC., a Delaware Limited Liability Company; and DOES 1-100, inclusive<br><br>Defendants. | Case No. 4:26-cv-01506-JST<br><br>Action Filed: February 20, 2026<br><br>**DEFENDANT BEENVERIFIED, LLC.'S NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 20, 2026<br>Time: 2:00 p.m.<br>Courtroom: 6 – 2nd Floor<br><br>Judge: District Judge Jon S. Tigar |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on August 20, 2026 at 2:00 p.m. in Court Room 6, 1301 Clay Street, Oakland, California 94612, Defendant BeenVerified, LLC., ("BeenVerified") or ("Defendant"), will and hereby does move the Court to dismiss Plaintiff Sherif Sherif's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure (12)(b)(1) and 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the Declaration of Sneha Banerjee, and any other arguments heard or considered by this Court, and any other matters the Court may properly consider.

## STATEMENT OF RELIEF REQUESTED

BeenVerified seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint with prejudice for lack of Article III standing and failure to state a claim upon which relief can be granted.

Dated: June 9, 2026

**HOGAN LOVELLS US LLP**

By: */s/ Amber Trincado*
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hoganlovells.com
sneha.banerjee@hoganlovells.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hoganlovells.com

*Counsel for Defendant BeenVerified, LLC*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

A. The BeenVerified Website ..... 2

B. Plaintiff's Allegations ..... 3

LEGAL STANDARD ..... 4

A. Motion to Dismiss for Lack of Standing Under Rule 12(b)(1) ..... 4

B. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) ..... 4

ARGUMENT ..... 5

I. PLAINTIFF LACKS ARTICLE III STANDING ..... 5

A. Plaintiff Fails to Allege a Concrete Injury ..... 5

B. Plaintiff Lacks Standing to Pursue Injunctive Relief ..... 7

II. PLAINTIFF'S CLAIMS ARE DEFECTIVE AS PLEADED ..... 8

A. Plaintiff's CIPA Wiretapping Claim Under Section 631(a) Fails ..... 8

1. Plaintiff Fails to Allege That the "Contents" of Any Communications Were Intercepted by a Third Party ..... 9

2. Plaintiff Fails to Plead Contemporaneous Transmission ..... 9

3. Plaintiff Fails to Plead Facts Sufficient to Show that Defendant Aided and Abetted Nonparties to Commit Wrongdoing ..... 10

B. Plaintiff's CIPA Pen Register Claim Under Section 638.51(a) Fails ..... 11

1. Section 638.51's Text, Structure, and Legislative History Show It Should Not Criminalize Commonplace E-Commerce Technologies. ..... 11

2. CIPA Should Be Interpreted to Harmonize with the CCPA. ..... 13

3. Canon of Absurdity Weighs Against Plaintiff's Proffered CIPA Interpretation. ..... 14

4. If Any Ambiguity Remains, the Rule of Lenity Supports a Narrower Interpretation. ..... 14

C. Plaintiff's ECPA Claim Fails ..... 15

1. Plaintiff Fails to Allege that the "Contents" of Any Communications Were "Intercepted" ..... 15

2. ECPA Does Not Impose Aiding and Abetting Liability on Defendant ..... 16

3. Defendant's Consent Defeats Plaintiff's ECPA Claim ..... 16

D. Plaintiff Fails to State a Claim Under CDAFA ..... 16

1. Plaintiff Fails to Allege Damage or Loss Under CDAFA ..... 17

2. Plaintiff Fails to Allege that Defendant "Knowingly" "Accessed" His Computer "Without Permission" ..... 18

E. Plaintiff Fails to Allege an Invasion of Privacy Under California's Constitution ..... 20

1. There Was No Affirmative Intrusion ..... 20

2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy ..... 20

3. The Alleged Conduct Was Not Highly Offensive ..... 21

F. Plaintiff Fails to State a Claim Under the California UCL ..... 22

CONCLUSION ..... 23



HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) .................................. 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 2, 4

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ................................ 20

*Bittner v. U.S.*,
598 U.S. 85,103 (2023) ...................................................................................................... 14

*Blaker v. Netscout Sys.*,
No. 2SSTCV31283 (Cal. Super. Ct. May 27, 2026) ............................................................. 12

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................ 16

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................................ 23

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................................................ 10

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................ 17

*Custom Packaging Supply, Inc. v. Phillips*,
2:15-CV-04584-ODW-AGR, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......................... 19

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........................................................................ 14, 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .............................................................................. 17

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................................ 15

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) .................... 19



HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*In re Facebook, Inc. v. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................. 17, 18

*In re Facebook Internet Inc. Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................................................................ 22

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08–05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)..................................... 19

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)........................................................................... 21, 23

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)........................................................................................ 5

*In re Google, Inc. Priv. Poly' Litig.*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................... 21

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................ 9

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022)........................................................................................ 22

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .................................. 18

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)........................................................................... 18

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*,
958 F.2d 295 (9th Cir. 1992)........................................................................................ 13

*Herzman v. Smile Brands Inc.*,
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)............................. 7

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ......................................................................................... 20, 21

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 23

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................................................... 22

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................................ 16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........................................................................ 21

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4, 5

*Magliocca v. United Healthcare Servs. Inc.*,
No. 2:25-CV-3388 WBS SCR, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 21, 22

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d (3d Cir. 2016) .......... 19

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 15

*Nowak v. Xapo, Inc.*,
No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 17

*Patel v. Facebook Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 5

*People v. McCoy*,
25 Cal. 4th 1111 (2001) .......... 10

*People v. Ware*,
14 Cal. 5th 151 (2022) .......... 10

*Phillips v. U.S. Customs and Border Protection*,
74 F.4th 986 (9th Cir. 2023) .......... 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 6, 7, 20

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) .......... 7

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 WL 2993671 (Cal. Super. Ct. July 9, 2025) .......... 12, 14

*Salazar v. McDonald's Corp.*,
944 F.3d 1024 (9th Cir. 2019) .......... 14

*Sanchez v. Cars.com*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......... 12

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 03, 2025) ............................... 12, 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........................................................................... 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........................................................................... 20

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ................................. 17

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..................................................................... 8, 9, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................... 1, 4, 5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ................................................................................................. 8

*Swarts v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) ........................................................................ 8, 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ................................................................................................. 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................ 5, 8

*Tsering v. Meta Platforms, Inc.*,
No. 25-CV-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .................................... 18

*U.S. v. Reed*,
575 F.3d 900 (9th Cir. 2009) ..................................................................................... 15

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................................ 9

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 431 (7th Cir. 1993) ................................................................................. 2

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ..................................................................................... 8, 10

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..................................................................................... 4

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................... 16, 21

*Yale v. Clicktale, Inc.*,
No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)....................................... 9

*Yates v. United States*,
574 U.S. 528 (2015)................................................................................................................ 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)..................................................................................... 9

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)..................................................................................... 17

*Zhang v. Bank of Am., N.A.*,
806 F. Supp. 3d 1119 (C.D. Cal. 2025)................................................................................... 22

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)................................................................................................. 15

**Statutes**

18 U.S.C. § 2510(8) ................................................................................................................. 15

18 U.S.C. § 2511(1) ........................................................................................................... 15, 16

18 U.S.C. § 2520(a) ................................................................................................................. 16

18 U.S.C. § 3121(a) ................................................................................................................. 11

18 U.S.C. § 3127(3) ................................................................................................................. 11

18 U.S.C. §§ 2701–2712 (Electronic Communications Privacy Act of 1986
[ECPA]) ............................................................................................................................ 2, 15, 16

Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Unfair Competition Law [UCL]) ..................... 2, 22, 23

Cal. Bus. & Prof. Code § 17204 ................................................................................................ 23

Cal. Civ. Code §§ 1798.100, *et seq*. (California Consumer Privacy Act [CCPA]) ..................... 13

Cal. Civ. Code § 1798.115........................................................................................................ 13

Cal. Civ. Code § 1798.120........................................................................................................ 13

Cal. Civ. Code § 1798.175........................................................................................................ 13

Cal. Penal Code § 502(c) (California Computer Data Access and Fraud Act)................. 16, 18, 19

Cal. Penal Code § 502(e)(1)...................................................................................................... 16

Cal. Penal Code §§ 630–638.55 (California Invasion of Privacy Act [CIPA])............................. 1

Cal. Penal Code § 631 ........................................................................................................ *passim*

Cal. Penal Code § 638.50(b) .......... 11

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.51(a) .......... 11, 12

Cal. Penal Code § 638.52 .......... 12

Cal. Penal Code § 638.53 .......... 12

**Other Authorities**

California Assembly Floor Session, Jay Obernolte (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628 .......... 13

California Assembly Floor Session, Speaker of the Assembly Anthony Rendon (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628 .......... 13

California Senate Floor Session, Anna Caballero (June 3, 2025), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628 .......... 13

Fed. R. Civ. P. 8(a)(2) .......... 4

Fed. R. Civ. P. 12(b)(1) .......... 4, 5

Fed. R. Civ. P. 12(b)(6) .......... 2, 4, 8

Jacqueline Wade Cooney, Damon D. Eisenbrey, & Chesley S. McLeod, *California's Invasion of Privacy Act: A New Frontier for Website Tracking Litigation*, Americabar.org (Aug. 5, 2024) https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/ .......... 11

*Senate Comm. on Pub. Safety: Hearing on 2015 Cal. A.B. 929 on Pen Registers: Authorized Use*, 2015-2016 Reg. Sess. (Cal. June 15, 2015) .......... 11

Webster's Ninth New Collegiate Dictionary 630 (1985) .......... 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this action, Plaintiff Sherif Sherif ("Plaintiff") attempts to use a single visit to Defendant BeenVerified's Website to bring a sweeping class action to impose crippling statutory and criminal liabilities on Defendant and extract significant damages based only on allegations that Defendant's Website utilizes common technologies that are ubiquitous on the internet. Plaintiff's claims fail for numerous reasons, as set forth below, but the common thread is that Plaintiff has not been harmed and merely alleges a series of "bare procedural violations, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Plaintiff voluntarily visited the BeenVerified Website and allegedly searched for his own phone number. Upon visiting the Website, Plaintiff would have encountered the Website's cookie pop-up banner and the Website's Privacy Policy, both disclosing and describing the use of e-commerce technologies on the Website. Plaintiff also would have encountered numerous other privacy features and controls, enabling him to opt out of data collection, or to otherwise adjust his settings to his preferences. Any continued use of the Website after encountering such disclosures was informed and knowing and cannot support a claim of harm.

Moreover, even absent such privacy features, Plaintiff's Complaint does not describe the collection or use of sensitive or private information. Instead, he alleges that standard e-commerce technologies were used to collect routine, non-sensitive website interaction data. And prevailing Ninth Circuit precedent holds that this is insufficient to establish a concrete harm or injury, defeating his entire claim. Plaintiff's Complaint should be dismissed for the following reasons:

***First,*** Plaintiff fails to allege a concrete injury-in-fact sufficient to meet the Article III standard for standing.

***Second***, Plaintiff's California Invasion of Privacy Act ("CIPA") claims should be dismissed because he does not allege that any protected "contents" were intercepted, as basic browsing data does not convey a substantive message and therefore is not content; nor does he allege that Defendant acted with the requisite intent to support an aiding and abetting claim under CIPA. And Plaintiff's section 638.51 claim fails because everyday e-commerce technologies are not "pen

registers" under the statute as evidenced by CIPA's text, structure, purpose, legislative history, and California's comprehensive privacy legislation.

***Third***, Plaintiff's ECPA claim is equally flawed because (i) Plaintiff's allegations do not show that the "contents" of any communications were purportedly "intercepted," (ii) Plaintiff's aiding and abetting theory of liability is not permitted under ECPA, and (iii) BeenVerified consented to use of any e-commerce technologies, negating any ECPA claim.

***Fourth***, Plaintiff's California Computer Data Access and Fraud Act ("CDAFA") claim should be dismissed because Plaintiff does not allege the core elements of (i) damages or loss, or (ii) that BeenVerified knowingly accessed Plaintiff's device without permission.

***Fifth***, Plaintiff's invasion of privacy claim under the California Constitution fails because BeenVerified did not (i) affirmatively intrude into any protected space, (ii) to which Plaintiff had a reasonable expectation of privacy, (iii) in a highly offensive manner.

***Sixth***, Plaintiff's Unfair Competition Law ("UCL") claim should be dismissed because Plaintiff is not entitled to an equitable remedy under the UCL, and Plaintiff fails to allege an injury-in-fact.

Given these numerous deficiencies, as set out in more detail below, the Court should dismiss the Complaint in its entirety, without leave to amend.

## BACKGROUND

### A. THE BEENVERIFIED WEBSITE

BeenVerified – "The Everyday Information Company" – operates a website https://www.beenverified.com/ (the "Website"), that "provides easy, affordable access" to aggregated public record information.[1] *See* S. Banerjee Decl. ¶2 (Ex. A, ¶1). Visitors to the Website

[1] The Complaint describes BeenVerified's website. Copies of certain screens from that website are attached to the Banerjee Declaration as **Exhibit A**. This Court may take judicial notice of those materials. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.13 (2007) ("the District Court [is] entitled to take notice of the full contents of the published articles referenced in the complaint, from which [ ] truncated quotations [are] drawn."); *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, ***in particular, documents incorporated into the complaint by reference***, and matters of which a court may take judicial notice" (emphasis added)); see also *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

use everyday information, including names, addresses, and phone numbers, to initiate searches of available public records. *See* S. Banerjee Decl. ¶2 (Ex. A, ¶2). Before users can view their search results, they must create an account, purchase a subscription, and accept BeenVerified's terms and conditions, including its Online Privacy Policy. Banerjee Decl. ¶2 (Ex. A, ¶¶3-5).

BeenVerified provides an Online Privacy Policy[2] that clearly describes how website usage data is gathered and used, including for advertising and analytics purposes, and that Privacy Policy is permanently linked at the bottom of every page.[3] *See* S. Banerjee Decl. ¶2 (Ex. A, ¶6). The Website also features privacy controls that give users the ability to manage the use of e-commerce technologies, including cookies. *See* S. Banerjee Decl. ¶2 (Ex. A, ¶9). And, California users ***immediately*** encounter a pop-up banner upon visiting the site stating, "By clicking 'Accept All Cookies,' you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." *See* S. Banerjee Decl. ¶2 (Ex. A, ¶7). Users then have an option to either click "Accept All Cookies" or to adjust the settings to determine which types of cookies, if any, are allowed. *Id.* A selection must be made before a user can proceed with use of the Website. *Id.* Further, users who wish to change their settings as they continue their use of the Website, have access to these controls at any time through the "Cookie Settings" button. *See* S. Banerjee Decl. ¶2 (Ex. A, ¶¶8-9). The website also provides an email address dedicated to user inquiries regarding privacy and data issues. *See* S. Banerjee Decl. ¶2 (Ex. A, ¶¶10-11).

**B. PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that he visited the Website in approximately November of 2025 to "search for his phone number and review what data was available about him." Compl. ¶ 83. As a result of that visit, Plaintiff contends that BeenVerified utilized tracking technologies, shared his user data with third parties, and that he received "targeted advertising" as a result. *See id.*at ¶ 40.

Consistent with the limited nature of Plaintiff's interactions with the Website, his allegations regarding his "experience" are similarly sparse – he does not indicate what action he took when he encountered the Website's cookie banner (i.e. he does not specify whether he agreed to the use of e-commerce technologies, whether he opted out, or limited his settings), he does not

---

[2] https://www.beenverified.com/faq/privacy/
[3] https://www.beenverified.com/

identify any sensitive information he provided or viewed during his visit, he does not allege whether he created an account, he does not allege whether he viewed or consented to BeenVerified's Privacy Policy, and he does not allege the content of any specific user behavior data captured. Further, Plaintiff does not describe the quantity, nature, or timing of any advertisements allegedly received, nor does he state that such advertisements were unique to his visit to the Website.

Simply put, Plaintiff alleges that standard e-commerce technologies were operating when he visited the Website. Even if his allegations are taken as true, the Complaint amounts to nothing more than a claim of collecting data on and routine, non-substantive and non-sensitive browsing activity. Such conclusory allegations are insufficient to state a claim, and Plaintiff's Complaint should be dismissed in its entirety.

## LEGAL STANDARD

Defendant seeks dismissal of Plaintiff's Complaint under both FRCP 12(b)(1) for lack of standing and FRCP12(b)(6) for failure to state a claim.

### A. MOTION TO DISMISS FOR LACK OF STANDING UNDER RULE 12(B)(1)

A challenge to Article III standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Under Article III, Plaintiff bears the burden of establishing that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992). A motion to dismiss should be granted under Rule 12(b)(1) where Plaintiff alleges only "a bare procedural violation, divorced from any concrete harm," because such an intangible harm cannot "satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341.

### B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

A motion to dismiss should be granted under Rule of Civil Procedure 12(b)(6) when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible when the

allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court generally accepts material allegations as true, it need not credit allegations that are "'merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). Moreover, Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotations and citation omitted).

## ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff's Complaint should be dismissed because Plaintiff does not allege an injury in fact sufficient to establish Article III standing and fails to allege that a possible future injury is "certainly impending" sufficient to support a claim for injunctive relief.

### A. PLAINTIFF FAILS TO ALLEGE A CONCRETE INJURY

Under Rule 12(b)(1), Plaintiff bears the burden of establishing Article III standing, including a showing of an injury-in-fact. *See Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986, 991 (9th Cir. 2023). To establish an injury-in-fact, Plaintiff must establish an "invasion of a legally protected interest which is . . . concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. A concrete injury must be shown even where a Plaintiff claims an alleged statutory violation because "it is not enough for a plaintiff to allege that a defendant [] violated a right created by statute," the court "must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation." *Patel v. Facebook Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *Spokeo*, 578 U.S. at 341.

Tangible harms such as monetary damages and physical injuries readily qualify as concrete harms under Article III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). But, as the Ninth Circuit explained in *Phillips*, "an *intangible* injury may be concrete if it presents a material risk of tangible harm or "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," like common law torts or certain constitutional violations." *See Phillips*, 74 F.4th at 991 (citing *Spokeo*, 578 U.S. at 341).

Here, Plaintiff alleges that BeenVerified uses tracking technologies and shares user data

with third parties. Compl. ¶ 40. Whether such allegations represent a "concrete" injury sufficient to support Article III standing, was recently analyzed by the Ninth Circuit in *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025). In *Popa*, the plaintiff alleged that her personal information was captured by defendant's session-replay technology while she browsed for pet supplies on the website. *Id.* at 786-787. In considering the showing a plaintiff must make to demonstrate a concrete injury under *TransUnion*, the *Popa* Court noted that while there exists some inter-circuit division, all post-*TransUnion* decisions "share an important feature: they look to the *specific* underling harm experienced by the plaintiff and compare it, in detail to a *specific* common-law tort." *Id.* at 790-791. Thus, the Ninth Circuit held that *TransUnion* "requires a court to assess whether an individual plaintiff has suffered harm that has traditionally been actionable in our nation's legal system." *Id.* at 791.

Applying that standard to the facts before it, the Ninth Circuit concluded that Popa's claim of injury regarding the deployment of tracking technologies on a website was insufficient to establish standing. *Popa*, 153 F.4th at 794. Specifically, the Ninth Circuit rejected Popa's argument that the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts were analogous to her purported injury. *Id.* at 791792. The Court noted that those privacy torts require either an intentional interference with or a public disclosure of private facts that would be "highly offensive" to a reasonable person. *Id.* at 791. Relying on those common law torts as the benchmark for "harm," the Court held that Popa "does not explain how the tracking of her interactions with the [ ] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* The Court also rejected plaintiff's "broad theory that the common law protected privacy rights," holding that "there existed no free-roaming privacy right at common law." *Id.* at 792. Because she identified "no embarrassing, invasive, or otherwise private information collected by [the website]," Popa failed to plausibly allege infringement of a privacy interest sufficient to satisfy the standard for Article III standing. *Id.*

Following *Popa*, it is now settled in the Ninth Circuit that plaintiffs who fail to explain how technologies deployed on a website cause them to experience harm similar to the "highly offensive"

interferences or disclosures actionable at common law, do not have standing under Article III. *See Popa*, 153 F. 4th at 791-92. And while *Popa* dealt with session tracking technologies, district courts applying *Popa* have found no injury and no standing as to each of the website technologies at issue in Plaintiff's claims. *See, e.g., Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (applying *Popa* to dismiss a claim related to the use of ***Google tracking technology*** for targeted advertising purposes); *see Magliocca v. United Healthcare Servs. Inc.*, No. 2:25-CV-3388 WBS SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) (applying *Popa* to dismiss claims related to the alleged use of third-party tracking software); *see also Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (applying *Popa* to dismiss a claim involving ***device fingerprinting technologies*** (emphasis added)).

As in *Popa*, Plaintiff alleges that e-commerce technologies deployed when he visited the Website. Compl. ¶ 83. However, he does not plead facts showing that those technologies captured any "embarrassing, invasive, or otherwise private" information, nor does he allege that he entered sensitive information into the site, such as medical, financial, or other intimate details, that could make the alleged data collection "highly offensive to a reasonable person." *See Popa*, 153 F. 4th at 791-92. Plaintiff also fails to specify what, if any, "private information" about him was supposedly transmitted.[4] Instead, the allegations concern routine, non-sensitive website-interaction data on a public-facing site. This is not enough to establish a concrete injury under *Popa*. Plaintiff has not identified a harm "remotely similar to those protected by" common-law privacy torts and, as a result, fails to establish standing under Article III.

### B. PLAINTIFF LACKS STANDING TO PURSUE INJUNCTIVE RELIEF

Plaintiff also lacks standing under Article III to pursue injunctive relief. *See* Compl. ¶ 144. To seek injunctive relief, a plaintiff must show that he is under threat of suffering an "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; and it must be fairly traceable to the challenged action of the defendant. *Summers v.*

[4] Plaintiff's Complaint references "social security numbers," "background checks," and other buzz words intended to give the impression that the Website processes "highly sensitive data," however, Plaintiff's own complaint negates that conclusion as it concedes that the data available on the site are "public records." Compl. ¶ 55. Moreover, Plaintiff does not allege that he input or viewed "social security numbers" or otherwise performed a "background check" when he visited the Website.

*Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff's Complaint contains no allegations to credibly support a claim that any possible future injury is imminent. Specifically, there are no allegations from which the Court may reasonably infer that there is a sufficient likelihood that Plaintiff will return to the Website and that, if he does, highly sensitive information about him will be interfered with or disclosed. Thus, the risk of future injury is "too speculative to support Article III standing." *TransUnion*, 594 U.S. at 438.

## II. PLAINTIFF'S CLAIMS ARE DEFECTIVE AS PLEADED

Each of Plaintiff's claims should also be dismissed under FRCP 12(b)(6) for failure to allege sufficient facts to state plausible claims.

### A. PLAINTIFF'S CIPA WIRETAPPING CLAIM UNDER SECTION 631(A) FAILS

Section 631(a) of CIPA criminalizes the use of any "machine, instrument, or contrivance" that "reads, attempts to read, or to learn the contents" of a communication while the same "is in transit" without consent. Cal. Penal Code § 631(a) ("§ 631(a)"). To plead a violation of § 631(a), Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities. *Id.*; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024).

Plaintiff's theory is that Defendant is derivatively liable under the fourth clause of § 631(a) because Defendant "aided and abetted third-party interception by installing and using trackers on the website to collect Plaintiff's and class members' communications." *See* Compl. ¶¶ 53-66.[5] To establish derivative liability under the fourth clause of § 631(a), Plaintiff must first show that third party trackers engaged in conduct prohibited by the first, second, or third clause of § 631(a). *See Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 744 (N.D. Cal. 2023). Specifically, Plaintiff must allege sufficient facts to show that a third party ***willfully read "the contents or meaning" of a***

---

[5] Plaintiff is limited to a claim of derivative liability because Section 631(a) applies "only to eavesdropping by a third party and not to recording by a participant to [the] conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (citation omitted). Because Defendant was a party to the purported communications with the Website, there can be no direct claim against BeenVerified.

***communication without consent***. *See* § 631(a). This requires proving: "(1) the absence of consent of all parties to the communication; (2) eavesdropping by a third-party nonparticipant to the communication; and (3) an interception of the communication while in transit." *See Smith*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024).

**1. Plaintiff Fails to Allege That the "Contents" of Any Communications Were Intercepted by a Third Party**

Section 631(a) prohibits only the unauthorized interception of the "contents" of communications, *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing CIPA claim predicated on non-content information such as IP addresses, locations, browser types, and operating systems). Basic browsing data such as "keystrokes, mouse clicks, pages viewed, . . . the duration of the visit, [a device's] IP address, . . . browser type, and the operating system" does not convey a substantive message and therefore is not "contents." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021)*; see also McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021).

Plaintiff alleges that the technologies deployed on the Website collect cookies, device fingerprinting, session recording, and IP addresses. *See* Compl. ¶¶ 19-33. Such information is not content information, particularly in the present case, as Plaintiff does not allege what pages of the Website he visited or what information he purportedly provided, beyond a phone number, during his visit. Plaintiff's Section 631(a) claim should be dismissed for this reason alone. *See Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (dismissing claim because visitor's "IP addresses, locations, browser types, and operating systems . . . is not content").

**2. Plaintiff Fails to Plead Contemporaneous Transmission**

A claim under section 613(a) also requires Plaintiff to plead how a third party acquires communications ***contemporaneously*** with transmission. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) ("The statute applies to messages intercepted "while the same . . . is being sent from, or received." "While" implies the interception must occur ***contemporaneous*** with the sending or receipt of the message." (emphasis added)).

Courts reject conclusory assertions unsupported by technical facts. *Cody v. Ring LLC,* 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (dismissing for failure to explain how software works or how the interception occurred). Plaintiff's allegations only state that "Defendant installed the Trackers . . . and used the Trackers to collect identifying information . . . including IP addresses." *See* Compl. ¶ 109. Such conclusory allegations fail to state a claim because they do not specify how trackers allegedly deployed by Defendant operate to intercept communications contemporaneously with transmission.

**3. Plaintiff Fails to Plead Facts Sufficient to Show that Defendant Aided and Abetted Nonparties to Commit Wrongdoing**

Even if this Court finds that Plaintiff adequately pled a third party violation – he has not – Plaintiff has failed to plead derivative liability under the fourth clause of Section 631(a). Derivative liability requires that Plaintiff plead facts to support a claim that BeenVerified "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things prohibited in the first three clauses" of Section 631(a). *See Swarts,* 689 F. Supp. 3d at 744.

While CIPA does not define the terms "aids, agrees with, employs, or conspires with," these terms should be interpreted narrowly under the rule of lenity in alignment with California criminal law. *See Warden,* 99 Cal. App. 3d at 811 n.3 (describing Section 631 as "'patently ambiguous,'" and finding that its "language . . . should be interpreted in favor of the alleged violator"). Aiding and abetting requires "specific intent" and a factual showing that defendant "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *People v. McCoy,* 25 Cal. 4th 1111, 1118 (2001). Similarly, "conspire" requires "(1) the existence of an agreement between at least two persons; (2) the specific intent to agree to commit an offense; (3) the specific intent to commit the offense that is the object of the agreement; and (4) an overt act in furtherance of the conspiracy, which may be committed by any conspirator." *People v. Ware,* 14 Cal. 5th 151, 163 (2022). And the terms "agreed with" and "employed" are interpreted narrowly and consistently with the surrounding terms "aiding" and "conspiring." *See Yates v. United States*, 574 U.S. 528, 543 (2015).

Applying these standards, courts have found that the aiding and abetting clause in Section 631(a) requires a plaintiff to plead facts demonstrating some level of knowledge and intent. *See Smith*, 754 F. Supp. 3d at 942-943. Plaintiff cannot meet this standard in the instant case as the Complaint simply claims that BeenVerified owns and operates the Website that utilizes various standard e-commerce technologies. *See* Compl. ¶¶ 55-57. Plaintiff fails to allege that BeenVerified knowingly or intentionally aided, abetted, or conspired with a third party to intercept the contents of Plaintiff's alleged communications and thus he fails to state a plausible claim of derivative liability under CIPA.

**B. PLAINTIFF'S CIPA PEN REGISTER CLAIM UNDER SECTION 638.51(A) FAILS**

Section 638.51(a) of CIPA "prohibits any person from installing or using a pen register or a trap and trace device without first obtaining a court order." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (internal quotations omitted); *see also* Cal. Penal Code § 638.50(b); Cal. Penal Code § 638.51 ("§ 638.51"). The technology purportedly used on the Website is not a "pen register," as evidenced by CIPA's text, structure, purpose, legislative history, and California's comprehensive privacy legislation.

**1. Section 638.51's Text, Structure, and Legislative History Show It Should Not Criminalize Commonplace E-Commerce Technologies.**

CIPA's pen register provisions were written for an entirely different world. They were first enacted in 1967 to prevent telephone-call eavesdropping,[6] and later amended in 2016 to give law enforcement access to "pen register" and "trap and trace" tools used in criminal investigations. *Senate Comm. on Pub. Safety: Hearing on 2015 Cal. A.B. 929 on Pen Registers: Authorized Use*, 2015-2016 Reg. Sess. at 10 (Cal. June 15, 2015).[7] Indeed, the statute's text and structure demonstrate that it is a tool for law enforcement to investigate telephonic communications. And neither Section 638.51's text nor its legislative history indicate that the Legislature ever intended

---

[6] Jacqueline Wade Cooney, Damon D. Eisenbrey, & Chesley S. McLeod, *California's Invasion of Privacy Act: A New Frontier for Website Tracking Litigation*, Americabar.org (Aug. 5, 2024), https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/.

[7] *Compare* Cal. Penal Code § 638.51(a), *with* 18 U.S.C. § 3121(a); *compare* Cal. Penal Code § 638.50(b), *with* 18 U.S.C. § 3127(3).

to expand the statute beyond telephonic communications to criminalize the use of commonplace e-commerce technologies.

***First***, Section 638.51 is contained within a Chapter titled: "Interception of wire, electronic digital pager or electronic cellular ***Telephone Communications***." *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 WL 2993671, at *3 n.3 (Cal. Super. Ct. July 9, 2025) (dismissing claim because the technology at issue was not a pen register or trap and trace device) (emphasis added).

***Second***, Section 638.51(a) provides that a person "may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." CIPA § 638.51(a). Sections 638.52 and 638.53, in turn, describe the application and oral approval processes that "***peace officers***" must undertake to "install and use" a "pen register" or "trap and trace" device (emphasis added). And any order must include specific details about the subject "***telephone line.***" *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 WL 2996812, at *1 (Cal. Super. Oct. 3, 2025) (emphasis added). The plain text of the statute is clear – it is not intended to regulate or criminalize ubiquitous e-commerce technologies used by virtually every modern website.

***Third,*** Section 638.51's legislative history further "suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information ***from telephone numbers***, not internet communications such as websites." *Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) (emphasis added); *see also Blaker v. Netscout Sys., Inc.* No. 2SSTCV31283, at * 6 (Cal. Super. Ct. May 27, 2026) (holding that Section 638.51 applies to telephonic communications and not to software on a commercial website). Section 638.51 was enacted in 2016, well after the widespread use of e-commerce technologies on the internet, yet the legislature explicitly declined to include e-commerce technologies in the legislation as the purpose of the bill was to "authorize[] state and local law enforcement agencies . . . to use pen registers and trap and trace devices in ***telephone surveillance***." *Scharon*, 2025 WL 2996812, at *2; *see also Blaker*, No. 2SSTCV31283, at *7 ("If the Legislature had intended for Section 638.51 to apply to commercial websites, it would have so stated either in the statute itself or in the surrounding materials").

### 2. CIPA Should Be Interpreted to Harmonize with the CCPA.

Plaintiff's theory also fails because it seeks to graft a decades-old telephone-surveillance statute onto modern internet technology, while ignoring that the Legislature has since enacted the California Consumer Privacy Act, California Civil Code §§ 1798.100 *et seq.* ("CCPA"). CCPA, enacted in 2018, reflects the Legislature's comprehensive framework for regulating how businesses collect and use personal information online through ordinary e-commerce technologies. California legislators repeatedly expressed their intention that CCPA "rightfully puts back in the hands of the legislature the ability to review, alter, and pass privacy laws."[8] CCPA notably ***permits*** businesses to use e-commerce technologies to collect consumers' personal information as long as the business makes the required disclosures concerning the information collected, *see* Civ. Code § 1798.115, provides the consumer with "the right to opt out of sale or sharing," *see id.* § 1798.120, and otherwise complies with CCPA's obligations.

Where two statutes address the same subject matter, the later-enacted and more specific statute governs. *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992). CCPA itself instructs that "[w]herever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. That harmonization is easily achieved here because CIPA § 638.51 was intended to apply to telephonic communications and CCPA regulates consumer e-commerce technologies – thus, CCPA ***not*** CIPA § 638.51, reflects the Legislature's deliberate approach to regulating e-commerce technologies. "If CIPA and the limitations on pen registers and trap and trace devices categorically prohibit collection of this data from website visitors, then the CCPA's provisions permitting reasonable collection of such data are a nullity." *See Scharon*, 2025 WL 2996812, at *2. The Court should decline to adopt an interpretation of CIPA that would nullify CCPA's carefully designed structure.[9]

---

[8] California Assembly Floor Session, Speaker of the Assembly Anthony Rendon, at 02:26:20 (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628; *see also* California Assembly Floor Session, Jay Obernolte, at 02:18:37 (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628 ("[H]ere in the legislature is the appropriate venue for this debate. I think we can do a better job of balancing the trade-offs between protecting digital privacy on the one hand and encouraging commerce on the other.")

[9] Moreover, during recent Senate floor debates over a 2025 amendment of CIPA, the bill sponsor stated that "[s]uing under CIPA for activity that's already governed by the CCPA goes against the legislature's intent of setting up the CCPA. It creates confusion, punishes compliance, and it doesn't make Californians any safer online." California Senate Floor Session, Anna Caballero, at 1:50:49

**3. Canon of Absurdity Weighs Against Plaintiff's Proffered CIPA Interpretation.**

Plaintiff's proffered interpretation of Section 638.51 implicates crippling civil and criminal liability, punishable by a $2,500 fine and up to one year of imprisonment. To adopt Plaintiff's theory of liability that such provisions should be applied to common technologies used on all modern websites, would result in criminalizing much of the internet, including every publicly available website that obtains an IP address or device information to deliver a webpage – an absurd result that the Court should avoid. *See Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1032 (9th Cir. 2019) ("courts may not interpret a statute so as to produce 'absurd consequences.'" (citation omitted)). And the consequences of Plaintiff's proffered interpretation may even extend beyond the internet. As a California court recently reasoned, "[i]f CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device." *Rodriguez,* 2025 WL 2993671, at *3. The Court should reject an interpretation of CIPA that would yield such absurd results.

**4. If Any Ambiguity Remains, the Rule of Lenity Supports a Narrower Interpretation.**

When a governing standard is set forth in a criminal statute, or where a civil statute imposes punitive civil liabilities, the rule of lenity applies in resolving ambiguities regarding the statute's applicability. *See Doe v. Eating Recovery Ctr. LLC,* 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (citation omitted). And where the words of a statute do not plainly impose a criminal penalty or punitive liability, an entity should not be subject to such a penalty. *Bittner v. U.S.*, 598 U.S. 85,103 (2023).

A close review of Section 638.51's statutory structure, legislative history, and more recent legislative developments (*see supra* pp. 15-20) each indicates that there is significant ambiguity and uncertainty in trying to apply CIPA § 638.51 to commonplace e-commerce technologies. In fact, as another court recently explained, "[t]he language of CIPA is a total mess [and] . . . the mess

(June 3, 2025), *available at* https://www.senate.ca.gov/media/senate-floor-session-20250603.

gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies . . . it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Doe*, 806 F. Supp. 3d at 1112. These are precisely the circumstances in which the rule of lenity favors strict construction. *Id.* (applying the rule of lenity when interpreting CIPA § 631 to e-commerce technologies). Given that CIPA is a criminal statute, if any ambiguity remains as to whether Section 638.51 applies to the facts alleged here, the rule of lenity instructs that the statute be strictly construed and that Plaintiff's expansive interpretation be rejected.

**C. PLAINTIFF'S ECPA CLAIM FAILS**

Plaintiff also fails to state an ECPA claim because (i) he fails to allege that any contents of a communication were intercepted, (ii) Plaintiff's aiding and abetting theory of liability is not permitted under the ECPA, and (iii) ECPA is a single-party consent law. 18 U.S.C. § 2511(1).

**1. Plaintiff Fails to Allege that the "Contents" of Any Communications Were "Intercepted"**

Plaintiff's allegations that he "visited" the Website "in November 2025 to search for his phone number and review what data was available about him," Compl. ¶ 83, do not plausibly allege that the "contents" any communications were transmitted to a third party. *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935-36 (N.D. Cal. 2015) (dismissing ECPA claim based on failure to plausibly allege interception of "content" through alleged use of cookies). "Contents" are defined as the "substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8); *see U.S. v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009). The Ninth Circuit has explained that "record information regarding the characteristics of the message that is generated in the course of the communication" is not "content." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).[10] And basic website browsing activity is record, not content, information. *Id.* at 1109 (dismissing an ECPA claim for failure to plausibly allege that defendants divulged the "contents" of a communication).

Additionally, the Wiretap Act, prohibits only "interceptions" of electronic communications. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002). Courts have clarified that

[10] *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("analysis for a violation of CIPA [§ 631(a)] is the same as that under the [ECPA]").

Congress intended a narrower definition of "intercept" with regard to electronic communications, holding that the communication must be acquired ***during transmission***, not while it is in electronic storage. *Id.* at 878 (emphasis added). The court explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)). In other words, "acquisition of email messages stored on an electronic [ ] system, but not yet retrieved by the intended recipients, [i]s not an 'interception' under the Wiretap Act." *Id.* at 876. Plaintiff's Complaint fails to plead that Defendant, or any third party, intercepted and collected the contents of any communications during transmission.

**2. ECPA Does Not Impose Aiding and Abetting Liability on Defendant**

Given that the Website was the intended recipient of Plaintiff's browsing interactions, Plaintiff's theory of liability, at most, appears to be that BeenVerified purportedly aided third parties in their supposed interception of his communications. *See* Compl. ¶ 120. However, "there is simply no secondary liability (such as aiding and abetting) under the ECPA." *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015); *see also* 18 U.S.C. § 2520(a).

**3. Defendant's Consent Defeats Plaintiff's ECPA Claim**

ECPA is a one-party consent law, meaning "the consent of one party is a complete defense to a[n] [ECPA] claim." 18 U.S.C. § 2511(1)(d); *see also, In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Because Plaintiff acknowledges that BeenVerified owns and operates the Website, *see* Compl. ¶ 83, BeenVerified is unambiguously a party to the communication, and consented to the use of any alleged e-commerce technologies, defeating Plaintiff's ECPA claim.

**D. PLAINTIFF FAILS TO STATE A CLAIM UNDER CDAFA**

To state a claim under CDAFA, Plaintiff must show that BeenVerified (i) knowingly accessed Plaintiff's data or computer, or aided access of Plaintiff's data or computer (ii) without permission to (iii) take, damage, use, or alter the computer, its software and programs, or data; or to obtain money, property, or data. Cal. Penal Code § 502(c). Plaintiff must also show that he suffered a "damage or loss" as a result of the alleged violation. *Id.* § 502(e)(1).

**1. Plaintiff Fails to Allege Damage or Loss Under CDAFA**

CDAFA provides that only an individual who has "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action. *Id.* Here, Plaintiff generally states that "as a direct and proximate result of Defendant's violations of CDAFA, Plaintiff and Class members have suffered damages." *See* Compl. ¶¶ 143-144. However, Plaintiff alleges no facts to support his claim that Defendant's alleged tracking and use of Plaintiff's data is "damage or loss" within the meaning of CDAFA. *See, e.g., Nowak v. Xapo, Inc.,* No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim based on loss of value of stolen cryptocurrency in part because the nature of the loss was not cognizable under CDAFA); *see Smith v. Rack Room Shoes, Inc.,* No. 24-CV-06709-RFL, 2025 WL 1085169, at *6 (N.D. Cal. Apr. 4, 2025) (granting motion to dismiss CDAFA claim because the "existing allegations of economic injury in the FAC are conclusory"). Plaintiff's conclusory assertions, which simply restate the elements of the claim without supporting factual allegations, are insufficient to state a CDAFA claim. *See Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1081-1083 (N.D. Cal. 2023) (dismissing a CDAFA claim because plaintiffs failed to "plausibly allege facts establishing recognized 'loss or damage'").

Plaintiff's other allegations of purported also do not support a claim of damage or loss under CDAFA. Plaintiff's allegations of a purported invasion of privacy are insufficient as courts have recognized that "loss of the right to control [one's] own data" is not a "damage or loss" sufficient to establish statutory standing under CDAFA. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487-–88 (N.D. Cal. 2021); *see also Doe.*, 690 F. Supp. 3d at 1081.

And Plaintiff's conclusory allegation that "Defendant was unjustly enriched" by its purported CDAFA violation also does not save his claim because he "fails to allege facts showing [Defendant] was in fact unjustly enriched." *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 900 (S.D. Cal. 2025) (dismissing Plaintiff's CDAFA claim because "Plaintiff does not allege . . . facts supporting the assertion that Defendant was unjustly enriched by using tracking tools to collect her data"). Moreover, prevailing case law forecloses an argument that any alleged profit an entity made as a result of disclosing user data is sufficient to demonstrate a loss. *See In re Facebook, Inc. v.*

*Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *see also Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (holding a company's gain of money does not equal a plaintiff's loss of money or property). Plaintiff has failed to allege a loss or harm needed to bring a claim under CDAFA.

**2. Plaintiff Fails to Allege that Defendant "Knowingly" "Accessed" His Computer "Without Permission"**

Plaintiff's claim also fails as he does not plausibly allege that BeenVerified "knowingly" "accessed" his data or computer "without permission." See Cal. Penal Code §§ 502(c)(1), (2), (4), (6), and (7). The requirement that an individual act "knowingly" "imports . . . an awareness of the facts which bring the proscribed act within the terms of the statute." *See Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611-RFL, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (citation omitted). In other words, the term "knowingly" modifies each element of the alleged violation. *Id.* Thus, the phrase "knowingly and without permission" in Sections 502(c)(1), (2), and (7) requires that an individual be aware both that they are using data or accessing a computer and that they are doing so without permission. *Id.*

***First***, Plaintiff has not adequately pled that BeenVerified *knew* its use and access were without the user's permission. *See Tsering*, 2026 WL 89320, at *4. Requiring an individual to know that they lack permission to engage in the proscribed acts aligns with the purpose of CDAFA, which was "originally enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023). Otherwise, CDAFA would apply to individuals who knowingly access a computer or use data under the reasonable but mistaken belief that they had permission. *See Tsering*, 2026 WL 89320, at *4.

***Second***, Plaintiff does not plausibly allege that BeenVerified accessed Plaintiff's data or computer "without permission." See Cal. Penal Code §§ 502(c)(1), (2), (4), (6), and (7). Courts have interpreted access "without permission" as requiring that the defendant "gains access to a computer, computer network, or website *to which access was restricted* through technological

means[.]" See *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780 JW, 2010 WL 3291750, at *6, *11 (N.D. Cal. July 20, 2010) (citations omitted) (emphasis added); *see also Custom Packaging Supply, Inc. v. Phillips*, 2:15-CV-04584-ODW-AGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) ("'Without permission' is defined as accessing or using 'a computer, computer network, or website in a manner that overcomes technical or code-based barriers.'" (citation omitted)). Plaintiff does not allege that BeenVerified took steps to circumvent any technological barrier to gain access to Plaintiff's computer. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). As a result, Plaintiff has not alleged hacking or any remote equivalent. *Id.* Rather, his allegations are consistent with the standard operation of the internet. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 262, 268 (3d Cir. 2016) (explaining that "website[s] [are] an assemblage of content from multiple servers hosted by different parties"). Because Plaintiff voluntarily visited the Website and initiated a transmission of data, there is no plausible allegation that BeenVerified accessed Plaintiff's data or computer "without permission," and Plaintiff's CDAFA claim should be dismissed as a result.

***Third***, Plaintiff does not allege the ***introduction*** of trackers into his computer or that any trackers ***accessed*** data from his computer. *See Allison v. PHH Mortg*., No. 25-CV-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026). In *Allison*, Plaintiff alleged that PHH implemented code-based tracking devices into its website that deployed when users visited the website and that PHH transmitted customer's communications with the website to third parties without authorization. *Id.* at *1-2. The Court held that plaintiff failed to state a claim under Section 502(c)(2) and (8) because the complaint only alleged that PHH utilized trackers on its website and that a visitor to the website could not avoid the trackers. *Id.* at *7. Such alleged conduct was not the same as alleging that trackers were ***introduced*** into Allison's computer or that they ***accessed*** data from his computer. *Id.* Accordingly, Allison did not have a claim under Sections 502(c)(2) or (8). *Id.* The same is true here. The Complaint only alleges that BeenVerified's trackers collected and transmitted data and does not allege that trackers were introduced into Plaintiff's computer or that any data on his computer was accessed. *See* Compl. at pp. 1-5.

### E. PLAINTIFF FAILS TO ALLEGE AN INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION

The California Constitution sets a "high bar" for establishing an invasion of privacy claim and Plaintiff's claims do not come close to clearing that bar. *See Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). There are three elements plaintiffs must plead for invasion of privacy claims: (1) "a specific, legally cognizable privacy interest," (2) "a reasonable expectation of privacy on plaintiff's part," and (3) an invasion "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36-37 (1994). "A defendant may prevail in a state constitutional privacy case by negating any of the three elements." *Id.* at 40.

#### 1. There Was No Affirmative Intrusion

BeenVerified did not invade Plaintiff's privacy where Plaintiff voluntarily navigated to the Website and made the decision to browse around. "If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Hill*, 7 Cal. 4th at 26. BeenVerified simply made its Website available and responded to communications from Plaintiff's browser. That alone defeats Plaintiff's invasion of privacy claim. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017).

#### 2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy

Plaintiff cannot establish a reasonable expectation of privacy for the following reasons:

***First***, Plaintiff has no reasonable expectation of privacy over his device IP address, basic device information, and browsing activity, as detailed above. *See Popa,* 153 F.4th at 792 (rejecting the notion that there is a "free-roaming privacy right" applicable to website browsing). Courts have consistently held that there is no broad privacy right attached to website browsing, and that a "reasonable" expectation of privacy must be based on widely accepted community standards and norms. *Hill,* 7 Cal. 4th at 26.

***Second***, BeenVerified's Online Privacy Policy[11] and disclosures of data collection

---

[11] https://www.beenverified.com/faq/privacy/

eliminate any user's reasonable expectation of privacy because collection and usage of data on the Website is disclosed to all users. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1028-29. Further, the Privacy Policy includes clear instructions for users to adjust their cookie settings via the "Cookie Settings" button, emphasizing the user's control and consent regarding data collection. *Id.* And California users visiting the Website encounter a pop-up cookie banner immediately upon arriving at the page and requires users to either agree to the use of e-commerce technologies or to adjust their settings before proceeding. BeenVerified's disclosures and Privacy Policy preclude an intrusion claim. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054-55, 1058 (N.D. Cal. 2025); *see also In re Google, Inc. Priv. Poly' Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013).

**3. The Alleged Conduct Was Not Highly Offensive**

While no hard-and-fast rule has been set for determining when an alleged invasion of privacy is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 37, courts consider the following factors: (i) whether the defendant used the private information for "some improper purpose;" (ii) the "pervasiveness" of the alleged invasion; and (iii) the degree of sensitivity of the information. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139-1142 (E.D. Cal. 2021). Based on the allegations in the Complaint, each factor shows that BeenVerified's alleged conduct is not "highly offensive" or "egregious."

***First***, Plaintiff does not plausibly allege that BeenVerified used his IP address or other browsing information for an improper purpose. Rather, he alleges that BeenVerified used the e-commerce technologies for "marketing and analytics purpose." *See* Compl. ¶ 77. Courts hold that a Plaintiff's privacy claim fails when the purpose of collecting data is routine commercial behavior. *See e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), as modified (June 7, 2011) (Defendant obtaining plaintiff's address without their knowledge or permission and using it to send advertisements constitutes standard commercial practice, not an egregious breach of social norms). Moreover, because any data BeenVerified uses or tracks is done so consistent with CCPA, BeenVerified's conduct is contemplated under and consistent with California law; thereby negating

any alleged "improper purpose." *See Mastel,* 549 F. Supp. 3d at 1140.

***Second***, Plaintiff allegedly visited the Website once and, at most, entered his phone number into a search bar. These are not allegations of a pervasive privacy invasion. *Cf. In re Facebook Inc. Internet Tracking Litig.,* 956 F.3d 589, 596 (9th Cir. 2020) (defendant's conduct a pervasive intrusion because defendant monitored users' activity across the internet ***after they had logged out*** (emphasis added)); *with Mastel,* 549 F. Supp. 3d at 1141 (Dismissing claims where there were no allegations the defendant continued to collect information after the software application was closed).

***Third***, courts routinely dismiss privacy claims at the pleading stage where the information at issue is not particularly sensitive. *Cf. Mastel*, 549 F. Supp. 3d at 1141-42 (privacy claims dismissed where plaintiff provided "no indication of the sensitivity of the communications at issue"); with *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (allegations of data collection including sensitive health and personal safety information, and race and politics, went "well beyond" routine commercial behavior). As detailed above, *supra* pp. 4-7, Plaintiff's device IP addresses, basic device information, and unspecified browsing activity are not personal or sensitive.

### F. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA UCL

Plaintiff's UCL claim is an equitable claim that relies entirely on the other statutory and tort claims in his Complaint. Because it is an equitable claim, Plaintiff's UCL claim should be dismissed because he has not pled that he lacks an adequate remedy at law. *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1313 (9th Cir. 2022) (the court only has equitable jurisdiction under "federal common law ***if the plaintiff has no adequate legal remedy***" (emphasis added)); *see Zhang v. Bank of Am., N.A.,* 806 F. Supp. 3d 1119, 1127 (C.D. Cal. 2025) (a plaintiff seeking "equitable relief must at a minimum, plead that [he] lacks adequate remedies at law" (citation omitted)). Given that Plaintiff's UCL claim is based entirely on the other legal claims in his Complaint, he is clearly unable to allege that he lacks an adequate remedy at law.

Plaintiff's UCL claim should also be dismissed because he does not plausibly allege that he "suffered injury in fact and [] lost *money* or *property* as a result of the unfair competition." Cal.

Bus. & Prof. Code § 17204 (emphasis added). That is because Plaintiff's personal information does not constitute property. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) ("weight of authority" holds that a plaintiff's personal information does not constitute property); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012).

In *Claridge*, the Court rejected plaintiff's theory that personally identifiable information – usernames and passwords – constitutes "money" because it operates as currency in the internet economy; and rejected plaintiff's claim that user information is "lost" within the meaning of the UCL when it is accessed by third parties. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011). The Court therefore dismissed the UCL claim with prejudice. *Id.* at 863.

So too here. Plaintiff claims that he was "injured and lost money or property, including but not limited to the loss of his legally protected interest in the privacy of his personal information, data, and communications." *See* Compl. ¶ 159. However, Plaintiff has not actually identified any money lost or any property that no longer belongs to him. Plaintiff's UCL claim should be dismissed as a result. *See Folgelstrom,*195 Cal. App. 4th at 994, as modified (June 7, 2011) (customer's personal information was not property under the UCL and, in any case, its value was not diminished when retailer collected it for marketing purposes). Plaintiff fails to state a claim under the UCL.[12]

**CONCLUSION**

For these reasons, BeenVerified respectfully requests that the Court grant BeenVerified's motion to dismiss, in its entirety, with prejudice.

Dated: June 9, 2026

**HOGAN LOVELLS US LLP**

By: */s/ Amber Trincado*
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111

[12] Given that Plaintiff's UCL claim is predicated on the same allegations that underly the other claims in his Complaint, he also fails to allege a claim under each of the UCL's three prongs – unlawful, fraudulent, and unfair.

Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hoganlovells.com
sneha.banerjee@hobanlovells.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hoganlovells.com

*Counsel for Defendant BeenVerified, LLC*