**HOGAN LOVELLS CADWALADER US LLP**
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hlc.com
sneha.banerjee@hlc.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hlc.com

*Attorneys for Defendant BeenVerified, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

SHERIF SHERIF, on behalf of himself and all others similarly situated

Plaintiff,

v.

BEENVERIFIED, LLC., a Delaware Limited Liability Company; and DOES 1-100, inclusive

Defendants.

Case No. 4:26-cv-01506-JST

Action Filed: February 20, 2026

**DEFENDANT BEENVERIFIED, LLC.'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: December 10, 2026
Time: 2:00 p.m.
Courtroom: 6 – 2nd Floor

Judge: Hon. Judge Jon S. Tigar

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on December 10, 2026, at 2:00 p.m. in Court Room 6, 1301 Clay Street, Oakland, California 94612, Defendant BeenVerified, LLC., ("BeenVerified") or ("Defendant"), will and hereby does move the Court to dismiss Plaintiff Sherif Sherif's ("Plaintiff") First Amended Complaint pursuant to Federal Rules of Civil Procedure (12)(b)(1) and 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the Declaration of Sneha Banerjee, and any other arguments heard or considered by this Court, and any other matters the Court may properly consider.

## STATEMENT OF RELIEF REQUESTED

BeenVerified seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss First Amended Complaint with prejudice for lack of Article III standing and failure to state a claim upon which relief can be granted.

Dated: August 14, 2026

**HOGAN LOVELLS CADWALADER US LLP**

By: <u>*/s/ Amber Trincado*</u>
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hlc.com
sneha.banerjee@hlc.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hlc.com

*Counsel for Defendant BeenVerified, LLC*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. The BeenVerified Website ..... 1

B. Plaintiff's Allegations ..... 2

III. LEGAL STANDARD ..... 3

A. Motion to Dismiss Under Rule 12(b)(1) ..... 3

B. Motion to Dismiss Under Rule 12(b)(6) ..... 3

IV. ARGUMENT ..... 3

I. PLAINTIFF LACKS ARTICLE III STANDING ..... 3

A. Plaintiff Fails to Allege a Concrete Injury ..... 4

B. Plaintiff Lacks Standing to Pursue Injunctive Relief ..... 6

II. PLAINTIFF'S CLAIMS ARE DEFECTIVE AS PLEADED ..... 6

A. Plaintiff's CIPA Wiretapping Claim Fails ..... 6

1. No "Contents" Were Intercepted by a Third Party ..... 7

2. Defendant did not Aid or Abet Nonparties to Commit Wrongdoing ..... 7

B. Plaintiff's CIPA Pen Register Claim Fails ..... 8

1. Section 638.51 Does Not Criminalize E-Commerce Technologies. ..... 8

2. CIPA Should Be Interpreted to Harmonize with the CCPA. ..... 9

3. Other Principles of Statutory Interpretation. ..... 9

C. Plaintiff's ECPA Claim Fails ..... 10

1. No "Contents" of Communications Were Intercepted ..... 10

2. Defendant's Party Exception and Consent Defeat Plaintiff's Claim ..... 10

D. Plaintiff Fails to State a Claim Under CDAFA ..... 12

1. Plaintiff Fails to Allege Knowing Access Without Permission ..... 12

E. Plaintiff Fails to Allege an Invasion of Privacy ..... 13

1. Plaintiff Consented to BeenVerified's Data Practices ............................... 13
2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy ................. 14
3. The Alleged Conduct Was Not Highly Offensive .................................... 14
F. Plaintiff Fails to State a Claim Under the UCL .................................................... 15
V. CONCLUSION ........................................................................................................ 15



HOGAN LOVELLS CADWALADER US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) ................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 2, 3

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) .............................. 13

*Blaker v. Netscout Sys., Inc.*,
No. 25STCV31283, 2026 WL 1709143 (Cal. Super. Ct. May 27, 2026) (Trial Order) ......................................................................................................................... 9

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ......................................................................... 11

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................... 10

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600-JSC, 2026 WL 1670136 (N.D. Cal. June 9, 2026) ................................ 5

*Custom Packaging Supply, Inc. v. Phillips*,
2:15-CV-04584-ODW-AGR, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ......................... 13

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ......................................................................... 10

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ........................................................................................ 15

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ......................................................................................... 15

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) .................... 13

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08–05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ..................................... 13

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ......................................................................................... 14



HOGAN LOVELLS CADWALADER US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)........ 3

*In re Google Cookie Placement*,
806 F.3d 125 (3rd Cir. 2015) ........ 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)........ 12

*Herzman v. Smile Brands Inc.*,
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)........ 5

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 13, 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 15

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ 6

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........ 3, 4

*Magliocca v. United Healthcare Servs. Inc.*,
No. 2:25-CV-3388 WBS SCR, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026)........ 5

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........ 14, 15

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)........ 7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)........ 13

*Patel v. Facebook Inc.*,
932 F.3d 1264 (9th Cir. 2019)........ 4

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)........ 12

*People v. McCoy*,
25 Cal. 4th 1111 (2001) ........ 7



HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*People v. Ware*,
14 Cal. 5th 151 (2022) .......... 8

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .......... 4

*Planned Parenthood Fed'n of Am., Inc. v. Neman*,
51 F.4th 1125 (9th Cir. 2022) .......... 11, 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4, 5, 6, 14

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) .......... 5, 14

*Puerto v. Super. Ct.*,
158 Cal. App. 4th 1242 (2008) .......... 15

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 WL 2993671 (Cal. Super. Ct. July 9, 2025) .......... 8

*Salazar v. McDonald's Corp.*,
944 F.3d 1024 (9th Cir. 2019) .......... 10

*Sanchez v. Cars.com*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......... 9

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 03, 2025) .......... 8, 9

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 14

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 6, 7, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 1, 3, 4

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 6

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 6, 7

*Torres v. Seatgeek, Inc.*,
No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026)....................................... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................ 4, 6

*Tsering v. Meta Platforms, Inc.*,
No. 25-CV-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ............................. 12, 13

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979).............................................................................................. 6, 7

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)............................................................................................. 3

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ 7, 11, 14

*Yates v. United States*,
574 U.S. 528 (2015)............................................................................................................ 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021).............................................................................. 7

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)................................................................................ 11

*Zhang v. Bank of Am., N.A.*,
806 F. Supp. 3d 1119 (C.D. Cal. 2025)............................................................................. 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014).......................................................................................... 7, 10

**Statutes**

Cal. Civ. Code § 1798.115................................................................................................... 9

Cal. Civ. Code § 1798.120................................................................................................... 9

Cal. Civ. Code § 1798.175................................................................................................... 9

Cal. Penal Code § 502....................................................................................................... 12

Cal. Penal Code §§ 502(c)(1), (2), (4), (6), (7) ....................................................... 12, 13

18 U.S.C. § 2511(1) ............................................................................................................ 10

18 U.S.C. § 2511(2)(d)......................................................................................................... 11

18 U.S.C. § 2520(a) ........................................................................................................ 10

**Rules**

FRCP 12(b)(1)........................................................................................................................ 3

FRCP 12(b)(1)..................................................................................................................... 3, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this action, Plaintiff Sherif Sherif ("Plaintiff") attempts to use a few visits to Defendant BeenVerified's Website to bring a sweeping class action to impose crippling statutory and criminal liabilities on Defendant and extract significant damages based only on allegations that Defendant's Website utilizes common technologies that are ubiquitous on the internet. Plaintiff's claims fail for numerous reasons, as set forth below, but the common thread is that Plaintiff has not been harmed and merely alleges a series of "bare procedural violations, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Plaintiff visited the BeenVerified Website and allegedly searched for his own contact information and that of some family members. Plaintiff concedes that he left the Website before viewing search results, creating an account, or completing a purchase. Upon visiting the Website, Plaintiff would have encountered the Website's cookie pop-up banner and Privacy Policy, both disclosing and describing the use of E-Commerce technologies on the Website. Plaintiff also would have encountered numerous other privacy features and controls, enabling him to opt out of data collection, or to otherwise adjust his settings to his preferences. Any continued use of the Website after encountering such disclosures was informed and knowing and cannot support a claim of harm.

Moreover, even absent such privacy features, Plaintiff's Complaint does not describe the collection or use of sensitive or private information. Instead, he alleges that essential cookies were used and that standard E-Commerce technologies were used to collect routine, non-sensitive website interaction data. And prevailing Ninth Circuit precedent holds that this is insufficient to establish a concrete harm or injury, defeating his entire claim. Plaintiff's Complaint should be dismissed in its entirety as he does not have standing under Article III and his allegations otherwise fail to allege sufficient facts to state claims for relief that are plausible on their face.

## II. BACKGROUND

### A. The BeenVerified Website

BeenVerified operates a website https://www.beenverified.com/ (the "Website"), that



HOGAN LOVELLS CADWALADER US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provides users with access to aggregated public record information.[1] *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶¶ 1-2). Only users who purchase a subscription and consent to BeenVerified's Terms, Conditions, and Privacy Policy can view the results of search queries. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 11), ¶ 3.

California users encounter a pop-up banner upon entering the website which states, "By clicking 'Accept All Cookies,' you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 3). A selection ***must be made*** before a user can proceed, and users may change their settings ***at any time***. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶¶ 3-4). When users click the "Cookie Settings" button, they are presented with a "Privacy Preference Center" that provides control over cookie categories and a link to BeenVerified's Privacy Policy. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 5). This comprehensive Privacy Policy[2] identifies the cookies that BeenVerified uses and discloses that third party service providers may set cookies on users' devices, and links ***each*** of its service providers' privacy and cookie policies. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶¶ 15- 16). Users are informed that they "can manage [their] preferences and opt out of personalized advertising" through industry tools or through browser and device settings. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 17). Visitors of the Website who initiate search queries do so voluntarily after being presented with BeenVerified's robust Privacy Policy and privacy control tools. *See* S. Banerjee Decl. ¶ 3. Further, search results or reports are only accessible to users who consent to BeenVerified's Terms and Conditions and Privacy Policy and purchase a subscription. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 11), ¶ 3. BeenVerified's Privacy Policy is linked at each step of this process. *See* S. Banerjee Decl. ¶ 2 (Ex. A, ¶ 9).

### B. Plaintiff's Allegations

Plaintiff alleges that he visited the Website and initiated searches of certain publicly available information, including names, addresses, and phone numbers. However, Plaintiff concedes that he did not view any results because he did not enter his e-mail address, did not create

[1] The Complaint describes BeenVerified's website. Copies of certain screens from that website are attached to the Banerjee Declaration as **Exhibit A**. This Court may take judicial notice of those materials. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.13 (2007).

[2] https://www.beenverified.com/faq/privacy/

an account, did not enter payment information, did not reach a checkout or payment page, and did not purchase a subscription. Pl. First Amend. Comp. ("FAC") ¶¶ 118-19, ECF No. 28. As a result of his visit, Plaintiff contends that BeenVerified utilized tracking technologies and shared his user data with third parties. *See id.* ¶¶ 120-21. Even if his allegations are taken as true, the FAC amounts to nothing more than a claim of collecting data on routine, non-substantive and non-sensitive browsing activity. Such conclusory allegations are insufficient to state a claim, and Plaintiff's Complaint should be dismissed with prejudice.

## III. LEGAL STANDARD

Defendant seeks dismissal under both FRCP 12(b)(1) for lack of standing and FRCP 12(b)(6) for failure to state a claim.

### A. Motion to Dismiss Under Rule 12(b)(1)

A challenge to Article III standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). Plaintiff bears the burden of establishing (1) an injury in fact, (2) fairly traceable to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). Dismissal is warranted where Plaintiff alleges only "a bare procedural violation, divorced from any concrete harm." *Spokeo,* 578 U.S. at 341.

### B. Motion to Dismiss Under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not credit "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV. ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff's Complaint should be dismissed because Plaintiff does not allege an injury in fact sufficient to establish Article III standing and fails to allege that a possible future injury is "certainly

impending" sufficient to support a claim for injunctive relief.

**A. Plaintiff Fails to Allege a Concrete Injury**

Plaintiff bears the burden of establishing Article III standing, including a showing of an injury-in-fact. *See Phillips v. U.S. Customs* & *Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023). To establish an injury-in-fact, Plaintiff must establish an "invasion of a legally protected interest which is . . . concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. A concrete injury must be shown even where a Plaintiff claims an alleged statutory violation. *Patel v. Facebook Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *Spokeo,* 578 U.S. at 341. Intangible injuries may be concrete if they present a material risk of tangible harm or have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Phillips,* 74 F.4th at 991 (citing *Spokeo*, 578 U.S. at 341); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021).

Here, Plaintiff alleges an intangible harm as a result of BeenVerified's alleged use of tracking technologies and the sharing of user data with third parties. FAC. ¶¶ 11, 50, 126. Whether such allegations represent a "concrete" injury sufficient to support Article III standing, was recently analyzed by the Ninth Circuit in *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025). In *Popa,* the plaintiff alleged that her personal information was captured by an E-Commerce technology while she browsed a website. *Id.* at 786-87. The Court noted that courts considering whether plaintiffs alleging statutory violations have demonstrated concrete injuries "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail to a *specific* common-law tort" to determine "whether an individual plaintiff has suffered harm that has traditionally been actionable in our nation's legal system." *Id.* at 790-91.

Applying that standard to the facts before it, the Court concluded that Popa's claim of injury was insufficient to establish standing. *Popa,* 153 F.4th at 794. Specifically, the Ninth Circuit rejected Popa's argument that the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts were analogous to her purported injury. *Id.* at 791-92. The Court noted that those privacy torts require either an intentional interference with or a public disclosure of private facts that would be "highly offensive" to a reasonable person. *Id.* at 791. Relying on those



HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

common law torts as the benchmark for "harm," the Court held that Popa "does not explain how the tracking of her interactions with the [ ] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* The Court also rejected plaintiff's "broad theory that the common law protected privacy rights," holding that "there existed no free-roaming privacy right at common law." *Id.* at 792. Because she identified "no embarrassing, invasive, or otherwise private information collected," Popa failed to plausibly allege infringement of a privacy interest sufficient to satisfy the standard for Article III standing. *Id.* Following *Popa*, it is settled that plaintiffs who fail to explain how technologies deployed on a website cause them to experience harm similar to the "highly offensive" interferences or disclosures actionable at common law, do not have standing under Article III. *See Id.* at 791-92.

Plaintiff's claim of injury here is analogous to that which the Court found insufficient in *Popa*, and those that district courts have resoundingly rejected following the *Popa* decision.[3] Plaintiff alleges that E-Commerce technologies deployed when he visited the Website. FAC. ¶¶ 4-5. First, the cookies Plaintiff alleges are deployed are essential cookies and therefore there is no harm or statutory violations. Second, he does not plead facts showing that those technologies captured any "embarrassing, invasive, or otherwise private" information, nor does he allege that he entered sensitive information into the site, such as medical, financial, or other sensitive information, that could make the alleged data collection "*highly offensive* to a reasonable person." *See Popa*, 153 F. 4th at 791-92. Instead, Plaintiff merely alleges that he entered names, addresses and phone numbers – ubiquitous information that is common and publicly available. This stands in contrast to

[3] While *Popa* dealt with session tracking technologies, district courts applying *Popa* have found no injury and no standing as to each of the website technologies at issue in Plaintiff's claims. *See, e.g.*, *Torres v. Seatgeek, Inc.*, No. 25-CV-07118-LB, 2026 WL 1495202, at *1 (N.D. Cal. May 28, 2026) (applying *Popa* to dismiss claim where website allegedly collected plaintiff's browsing history, IP addresses, device information, and cookie identifiers); *Crano v. Sojern, Inc.*, No. 3:25-CV-02600-JSC, 2026 WL 1670136, at *6 (N.D. Cal. June 9, 2026) (dismissing claim where website tracking technology allegedly collected plaintiff's unique identifying numbers); *Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026); *see Magliocca v. United Healthcare Servs. Inc.*, No. 2:25-CV-3388 WBS SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026).

the invasive injury this Court has previously found actionable. *Cf. Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (holding "unlike in *Popa*, which involved non-sensitive browsing activity" plaintiffs allege that detailed user profiles were created "by tracking their interactions ***across the internet***, and ***that this tracking remains ongoing***") (emphasis added). Thus, Plaintiff has not identified a harm "remotely similar to those protected by" common-law privacy torts and, as a result, fails to establish standing under Article III.

### B. Plaintiff Lacks Standing to Pursue Injunctive Relief

Plaintiff also lacks standing to pursue injunctive relief because he does not allege that any possible future injury is imminent – there are no allegations that Plaintiff will return to the Website or that highly sensitive information will be interfered with or disclosed. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The risk of future injury is "too speculative to support Article III standing." *TransUnion*, 594 U.S. at 438.

## II. PLAINTIFF'S CLAIMS ARE DEFECTIVE AS PLEADED

Each of Plaintiff's claims should also be dismissed under FRCP 12(b)(6) for failure to allege sufficient facts to state plausible claims.

### A. Plaintiff's CIPA Wiretapping Claim Fails

To plead a CIPA wiretapping violation under section 631(a), Plaintiff must allege that Defendant (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained from the previous activities; or (4) aided another in the above. *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024).

Here, Plaintiff alleges that Defendant is derivatively liable because Defendant "aided and abetted third-party interception by installing and using trackers on the website." *See* FAC. ¶¶ 64-78.[4] To establish derivative liability, Plaintiff must show that third party trackers engaged in conduct prohibited by the first, second, or third clause of § 631(a). *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023). Specifically, Plaintiff must allege that a third party

[4] Plaintiff is limited to a claim of derivative liability under Section 631(a). *See Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (citation omitted). Because Defendant was a party to the purported communications with the Website, there can be no direct claim against BeenVerified.

***willfully read "the contents or meaning" of a communication without consent***. *See* § 631(a); *Smith*, 754 F. Supp. 3d at 939.

**1. No "Contents" Were Intercepted by a Third Party**

Section 631(a) prohibits only unauthorized interception of "contents." *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing CIPA claim predicated on non-content information such as IP addresses, locations, browser types, and operating systems). Basic browsing data does not convey a substantive message and is not "contents." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); *see also McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021).

While Plaintiff alleges that technologies deployed on the Website intercepted search queries, search categories, and website interactions, he concedes that he did not complete a transaction, view results, create an account, or submit payment. FAC. ¶ 79, 119. Without engaging in any substantive interaction with the Website, Plaintiff's alleged "communications" amount to nothing more than basic behavioral data voluntarily displayed on BeenVerified's website and Courts consistently hold that such browsing activity does not constitute "contents." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (holding content does ***not*** include "record information regarding the characteristics of the message"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) ("name, address, email address or phone number" are not content); As a result, Plaintiff's claim fails as a matter of law.

**2. Defendant did not Aid or Abet Nonparties to Commit Wrongdoing**

Plaintiff also fails to plead facts showing that BeenVerified "aids, agrees with, employs, or conspires with any person or persons" to do any acts prohibited in the first three clauses of Section 631(a). *See Swarts*, 689 F. Supp. 3d at 744. CIPA does not define "aids, agrees with, employs, or conspires with," but these terms are interpreted narrowly under the rule of lenity. *See Warden*, 99 Cal. App. 3d at 811 n.2. Aiding and abetting requires "specific intent" and a showing that defendant knows the perpetrator's criminal purpose and gives aid or encouragement with the intent of facilitating the crime. *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001). Similarly, "conspire" requires an agreement with the specific intent to commit an offense and an overt act in furtherance.

*People v. Ware,* 14 Cal. 5th 151, 163 (2022). And the terms "agreed with" and "employed" are interpreted narrowly and consistently with the terms "aiding" and "conspiring." *See Yates v. United States*, 574 U.S. 528, 543 (2015). Applying these standards, courts have found that the aiding and abetting clause in Section 631(a) requires a plaintiff to plead facts demonstrating some level of knowledge and intent. *See Smith,* 754 F. Supp. 3d at 942-43.

Here, Plaintiff pleads only that "[BeenVerified] used tracking software to [ ] intercept and collect information about Website visitors' behavior and activity." FAC. ¶ 146. Such allegations are insufficient to establish that BeenVerified ***knew*** a third party intended to ***intercept*** communications or that BeenVerified acted with the ***specific intent*** to facilitate an interception ***in violation of CIPA***. Plaintiff therefore fails to state a plausible claim for derivative liability.

**B. Plaintiff's CIPA Pen Register Claim Fails**

Plaintiff contends that BeenVerified violated Section 638.51(a) of CIPA, which "prohibits any person from installing or using a pen register or a trap and trace device without first obtaining a court order." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024). However, the E-Commerce technology at issue in his allegations are not "pen register" or "trap and trace" devices, as CIPA's text, structure, and legislative history confirm.

**1. Section 638.51 Does Not Criminalize E-Commerce Technologies.**

CIPA's pen register provisions were enacted in 1967 to prevent telephone-call eavesdropping[5] and to give law enforcement access to "pen register" and "trap and trace" tools in criminal investigations.[6] Neither Section 638.51's text nor its legislative history indicate that the Legislature intended to criminalize commonplace E-Commerce technologies.

For example, the plain text and placement of Section 638.51 demonstrate the legislature's intent that it apply to ***telephonic communications***. *See Rodriguez v. Sparc Grp., LLC,* No. 24STCV26946, 2025 WL 2993671, at *3 n.3 (Cal. Super. Ct. July 9, 2025) (dismissing claim because technology was not a pen register); *Scharon v. Paramount Glob.,* No. 25STCV10585, 2025

---

[5] Jacqueline Wade Cooney, Damon D. Eisenbrey, & Chesley S. McLeod, *California's Invasion of Privacy Act: A New Frontier for Website Tracking Litigation,* Americabar.org (Aug. 5, 2024), https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/.

[6] *Compare* Cal. Penal Code § 638.51(a), *with* 18 U.S.C. § 3121(a); *compare* Cal. Penal Code § 638.50(b), *with* 18 U.S.C. § 3127(3).



HOGAN LOVELLS CADWALADER US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WL 2996812, at *1 (Cal. Super. Oct. 3, 2025) (statute refers to subject ***telephone line***).

And the legislative history also "suggests that 'pen register' and 'trap and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information ***from telephone numbers***, not internet communications." *Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *see also Blaker v. Netscout Sys., Inc.*, No. 25STCV31283, 2026 WL 1709143, at *6-7 (Cal. Super. Ct. May 27, 2026) (Trial Order). Finally, the legislature explicitly declined to include E-Commerce technologies when amending Section 638.51 in 2016. *Scharon*, 2025 WL 2996812, at *2.

**2. CIPA Should Be Interpreted to Harmonize with the CCPA.**

Plaintiff's attempt to graft a decades-old telephone-surveillance statute onto modern internet technology also ignores the California Consumer Privacy Act, California Civil Code §§ 1798.100 *et seq.* ("CCPA"). CCPA is the Legislature's comprehensive framework for regulating how businesses collect and use personal information online.[7] CCPA ***permits*** businesses to use E-Commerce technologies to collect consumers' personal information as long as the business makes required disclosures, *see* Cal. Civ. Code § 1798.115, provides the consumer with "the right to opt out," *see id.* § 1798.120, and otherwise complies with CCPA's obligations. And CCPA instructs that "[w]herever possible, laws relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. Given that the cookies Plaintiff alleges were deployed are essential cookies, BeenVerified complies with CCPA and Plaintiff's claim under CIPA, and other statutes, fails as a matter of law. As courts have noted, "[i]f CIPA and the limitations on pen registers and trap and trace devices categorically prohibit collection of this data from website visitors, then the CCPA's provisions permitting reasonable collection of such data are a nullity." *Scharon*, 2025 WL 2996812, at *2. Standard principles of statutory construction instruct courts to avoid such an outcome.

**3. Other Principles of Statutory Interpretation.**

Other principles of statutory interpretation, including the canon of absurdity, and the rule

[7] California Assembly Floor Session, Speaker of the Assembly Anthony Rendon, at 02:26:20 (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628; *see also* California Assembly Floor Session, Jay Obernolte, at 02:18:37 (June 28, 2018), *available at* https://www.assembly.ca.gov/media/assembly-floor-session-20180628

of lenity, also support a rejection of Plaintiff's attempt to state a claim under CIPA's pen register provision. First, applying Section 638.51's civil and criminal provisions to common technologies used on all modern websites would criminalize much of the internet. The Court should reject this absurd interpretation. *See Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1031-32 (9th Cir. 2019).

Second, if any ambiguity remains, the rule of lenity supports a narrower interpretation of the statute. Where, as here, a civil statute imposes punitive liabilities, the rule of lenity applies. *See Doe v. Eating Recovery Ctr. LLC,* 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). Section 638.51's statutory structure and legislative history (*see supra* pp. 8-10) demonstrate significant ambiguity in applying CIPA § 638.51 to commonplace E-Commerce technologies—precisely the circumstances in which the rule of lenity favors strict construction. *Doe*, 806 F. Supp. 3d at 1112.

### C. Plaintiff's ECPA Claim Fails

Plaintiff also fails to state an ECPA claim because (i) he fails to allege that any contents of a communication were intercepted, (ii) aiding and abetting liability is not permitted under ECPA, and (iii) ECPA is a single-party consent law. 18 U.S.C. § 2511(1).[8]

#### 1. No "Contents" of Communications Were Intercepted

Under ECPA, the term 'contents' refers to the intended message conveyed by the communication and ***does not*** include record information regarding the characteristics of the message that is generated in the course of the communication. *In re Zynga Priv. Litig.*, 750 F.3d at 1106. As discussed in *supra*, Section II(A)(1), Plaintiff's allegations do not plausibly allege that the "contents" of any communications were transmitted to a third party.

#### 2. Defendant's Party Exception and Consent Defeat Plaintiff's Claim

ECPA is a one-party consent law containing a "party exception" exempting from liability any interceptions where one person "is a party to the communication." 18 U.S.C. § 2511(2)(d); *see In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense

---

[8] Given that the Website was the intended recipient of Plaintiff's browsing interactions, Plaintiff's theory appears to be that BeenVerified aided third parties in supposed interceptions. *See* FAC. ¶¶ 120-21. However, "there is simply no secondary liability (such as aiding and abetting) under the ECPA." *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015); *see also* 18 U.S.C. § 2520(a).

to a Wiretap Act claim."). Because Plaintiff acknowledges that BeenVerified owns and operates the Website, *see* FAC. ¶ 1, BeenVerified is unambiguously a party to any communications and consented to any alleged interceptions, defeating Plaintiff's ECPA claim.

**i. The Crime-Tort Exception to Party Consent Does Not Apply**

The crime-tort exception does not apply to save Plaintiff's ECPA claim. To invoke the crime-tort exception, Plaintiff must show that BeenVerified: (i) ***intended*** to commit an (ii) ***independent*** crime or tort (iii) ***at the time*** of the alleged interception. *See Planned Parenthood Fed'n of Am., Inc. v. Neman,* 51 F.4th 1125, 1135-36 (9th Cir. 2022) (emphasis added).

Plaintiff premises his crime-tort exception theory on the argument that BeenVerified's use of E-Commerce Technologies violated CIPA, CDAFA, and the California Constitution. *See* FAC. ¶ 78. But as discussed herein, Plaintiff fails to plead facts sufficient to bring those claims.

Further, Plaintiff cannot show that BeenVerified's purpose in the alleged deployment of E-Commerce technologies was to violate these statutes. And in applying the crime-tort exception, "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.,* 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted) (emphasis in original). A plaintiff must allege that the "primary motivation or a determining factor in [the defendant's] actions [was] to injure plaintiffs tortiously." *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (citation omitted) (emphasis added). Here, Plaintiff fails to allege that BeenVerified had a criminal or tortious purpose and instead only alleges that BeenVerified "used the communications…for the purpose of obtaining an ***economic benefit***." *See* FAC. ¶ 91. However, "the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (citation omitted).

Finally, Plaintiff cannot show that BeenVerified "intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording." *In re Google Cookie Placement,* 806 F.3d 125, 145 (3rd Cir. 2015) (citation omitted) (emphasis added). Stated differently, the "criminal or tortious purpose must be separate and independent from the act

of the recording [i.e., the act of interception]" for the crime-tort exception to be triggered. *Planned Parenthood*, 51 F.4th at 1136. Here, the alleged interception and purported crime are one and the same: the alleged recording of Plaintiff's browsing activity. Thus, the crime-tort exception is not applicable. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119-20 (S.D. Cal. 2023).

### D. Plaintiff Fails to State a Claim Under CDAFA

To state a CDAFA claim, Plaintiff must show that BeenVerified (i) knowingly accessed Plaintiff's data or computer, or aided access of Plaintiff's data or computer (ii) without permission to (iii) take, damage, use, or alter the computer, its software and programs, or data; or to obtain money, property, or data. Cal. Penal Code § 502(c).

#### 1. Plaintiff Fails to Allege Knowing Access Without Permission

Plaintiff's claim fails as he does not plausibly allege that BeenVerified "knowingly" "accessed" his data or computer "without permission." *See* Cal. Penal Code §§ 502(c)(1), (2), (4), (6), and (7). The term "knowingly" "imports . . . an awareness of the facts which bring the proscribed act within the terms of the statute." *See Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611-RFL, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026). The phrase "knowingly and without permission" requires that an individual be aware both that they are using data or accessing a computer and that they are doing so without permission. *Id.*

***First***, Plaintiff has not adequately pled that BeenVerified knew its use and access were ***without the user's permission***. *See Tsering*, 2026 WL 89320, at *4. Requiring an individual to know that they lack permission to engage in the proscribed acts aligns with the purpose of CDAFA, which was "originally enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023). Otherwise, CDAFA would apply to individuals who knowingly access a computer or use data under the reasonable but mistaken belief that they had permission. *See Tsering*, 2026 WL 89320, at *4. This is especially true where, as here, an individual voluntarily accesses a website that prominently displays a cookie banner, clearly posts its Privacy Policy disclosing data collection practices, and provides users with controls to adjust their cookie preferences and privacy settings. *Id.* at *5.

***Second***, Plaintiff does not plausibly allege that BeenVerified accessed Plaintiff's data or

computer "without permission." *See* Cal. Penal Code §§ 502(c)(1), (2), (4), (6), and (7). Courts have interpreted access "without permission" as requiring that the defendant "gains access to a computer, computer network, or website ***to which access was restricted*** through technological means[.]" *See Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780 JW, 2010 WL 3291750, at *6, *11 (N.D. Cal. July 20, 2010) (citations omitted) (emphasis added); *see also Custom Packaging Supply, Inc. v. Phillips*, 2:15-CV-04584-ODW-AGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). Plaintiff does not allege that BeenVerified circumvented any technological barrier to gain access to Plaintiff's computer. *See In re Facebook Priv. Litig.,* 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Plaintiff has not alleged hacking or any remote equivalent. *Id.* Rather, his allegations are consistent with the standard operation of the internet. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016). Because Plaintiff voluntarily visited the Website and initiated a transmission of data, there is no plausible allegation that BeenVerified accessed Plaintiff's data or computer "without permission," and Plaintiff's CDAFA claim should be dismissed.

***Third***, Plaintiff does not allege that any trackers ***accessed*** data from his computer. *See Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026). In *Allison*, the Court held that allegations that PHH utilized trackers on its website and that a visitor could not avoid the trackers was not the same as alleging that trackers ***accessed*** data from his computer. *Id.* The same is true here. The FAC does not allege unauthorized ***access*** of data residing on Plaintiff's device.

**E. Plaintiff Fails to Allege an Invasion of Privacy**

The California Constitution sets a "high bar" for invasion of privacy claims. *Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). Plaintiffs must plead: (1) "a specific, legally cognizable privacy interest," (2) "a reasonable expectation of privacy," and (3) an invasion "sufficiently serious … to constitute an egregious breach of the social norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36-37 (1994).

**1. Plaintiff Consented to BeenVerified's Data Practices**

BeenVerified did not invade Plaintiff's privacy where Plaintiff voluntarily navigated to the

Website and decided to browse and initiate searches of public information. "If ***voluntary consent*** is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Hill*, 7 Cal. 4th at 26. BeenVerified simply made its Website available and responded to communications from Plaintiff's browser. That alone defeats Plaintiff's invasion of privacy claim. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017).

**2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy**

Plaintiff has no reasonable expectation of privacy over his device IP address, basic device information, and browsing activity. *See Popa*, 153 F.4th at 792; *Hill*, 7 Cal. 4th at 26. And BeenVerified's Online Privacy Policy and disclosures eliminate any user's reasonable expectation of privacy because collection and usage of data on the Website is disclosed to all users. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1028-29; *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054-55, 1058 (N.D. Cal. 2025).

**3. The Alleged Conduct Was Not Highly Offensive**

While no hard-and-fast rule has been set for determining when an alleged invasion of privacy is "sufficiently serious … to constitute an egregious breach of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 37, courts consider the following factors: (i) whether the defendant used private information for "some improper purpose;" (ii) the "pervasiveness" of the alleged invasion; and (iii) the degree of sensitivity of the information. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139-1142 (E.D. Cal. 2021). Each factor shows BeenVerified's alleged conduct is not "highly offensive" or "egregious."

***First***, Plaintiff does not plausibly allege that BeenVerified used his information for an improper purpose. He alleges that BeenVerified used E-Commerce technologies for marketing analytics and targeted advertising, but courts hold that a plaintiff's privacy claim fails when the alleged purpose is routine commercial behavior. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). Indeed, courts hold that targeted advertising does not constitute a highly offensive invasion of privacy. *See Price*, 805 F. Supp. 3d at 1104–05.

***Second***, Plaintiff voluntarily navigated to a publicly accessible website, entered basic search queries of publicly available contact information, and left the Website without completing any

transactions or receiving any results. FAC. ¶¶ 81, 116, 119. These are not allegations of a pervasive privacy invasion and stand in contrast to the type of pervasive tracking that courts have found actionable. *Cf. In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (defendant's conduct a pervasive intrusion because it monitored users' activity ***across the entire internet*** and continued tracking them ***after they had logged out*** of the platform (emphasis added)).

***Third***, courts routinely dismiss privacy claims at the pleading stage where the information at issue is not particularly sensitive. *Cf. Mastel*, 549 F. Supp. 3d at 1141-42 (privacy claims dismissed where plaintiff provided "no indication of the sensitivity of the communications at issue"); with *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (allegations of data collection including ***sensitive health*** and personal safety information, and race and politics, went "well beyond" routine commercial behavior). As detailed above, *supra* pp. 4-6, Plaintiff's device IP addresses, basic device information, and browsing activity are not highly personal or sensitive. Further, Plaintiff's basic search queries of names and contact information do not implicate highly sensitive information and are readily distinguished from those categories of information that courts have held to be highly sensitive, including sensitive medical or financial information. *See e.g., Puerto v. Super. Ct.*, 158 Cal. App. 4th 1242, 1253 (2008).

### F. Plaintiff Fails to State a Claim Under the UCL

Given that Plaintiff's UCL claim is based entirely on the other legal claims, he is clearly unable to allege that he lacks an adequate remedy at law — a predicate requirement for bringing an equitable claim under the UCL. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *Zhang v. Bank of Am., N.A.*, 806 F. Supp. 3d 1119, 1127 (C.D. Cal. 2025). Plaintiff's UCL claim should also be dismissed because each of the predicate actions on which his UCL claim is based fail to state a claim upon which relief can be granted.

## V. <u>CONCLUSION</u>

For these reasons, BeenVerified respectfully requests that the Court grant BeenVerified's motion to dismiss, in its entirety, with prejudice.

Dated: August 14, 2026

**HOGAN LOVELLS CADWALADER US LLP**

By: <u>*/s/ Amber Trincado*</u>
Amber Trincado (Bar No. 260186)
Sneha Banerjee (Bar No. 339739)
4 Embarcadero Center, Ste 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
amber.trincado@hlc.com
sneha.banerjee@hlc.com

Jon M. Talotta (*pro hac vice* forthcoming)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hlc.com

*Counsel for Defendant BeenVerified, LLC*