**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERIF SHERIF, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEENVERIFIED, LLC., a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 4:26-cv-01506-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BEENVERIFIED, LLC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date: December 10, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 6 – 2nd Floor<br><br>Hon. Jon S. Tigar |

# TABLE OF CONTENTS


I. INTRODUCTION ... 1

II. LEGAL STANDARD ... 2

III. ARGUMENT ... 2

A. Defendant Cannot Use 2026 Website Materials to Resolve Disputed Facts Concerning Plaintiff's 2025 Visits and Consent ... 2

1. Judicial Notice Does Not Permit the Court to Accept Defendant's Disputed Factual Assertions as True. ... 2

2. Defendant's 2026 Website Screenshots Cannot Establish What Plaintiff Encountered During His 2025 Visits. ... 3

3. The FAC's Allegations of Pre-Consent Tracking and Plaintiff's Rejection of Cookies Must Be Accepted as True at the Pleading Stage. ... 4

B. Plaintiff Has Article III Standing Because the FAC Alleges a Concrete Privacy Injury Materially Different From the Innocuous Tracking in Popa ... 4

1. Plaintiff Alleges the Actual Interception and Disclosure of Private Communications, Not a Bare Statutory Violation. ... 4

2. *Popa* Is Materially Distinguishable Because the FAC Alleges Identity- and Family-Related Searches, Keyboard Capture, Session Replay, Persistent Fingerprinting, and Third-Party Use. ... 5

3. Recent Post-*Popa* Decisions Confirm That More Revealing, Persistent, and Intrusive Tracking Can Establish Concrete Injury. ... 6

4. Any Issue Concerning Standing for Prospective Injunctive Relief Does Not Defeat Plaintiff's Standing to Seek Relief for Completed Interceptions. ... 8

C. The FAC Plausibly Alleges a Violation of CIPA § 631 ... 8

1. Plaintiff's Search Queries and Keyboard Inputs Constitute the "Contents" of His Communications. ... 8

2. The FAC Plausibly Alleges Contemporaneous Interception While Plaintiff's Communications Were in Transit. ... 9

3. The FAC Plausibly Alleges That Independent Third Parties Acquired Plaintiff's Communications. ... 10

4. Defendant's Intentional Installation and Configuration of the Trackers Plausibly Establishes Liability Under § 631(a)'s Express Aiding Clause. ... 10

5. Defendant Cannot Establish Consent as a Matter of Law at the Pleading Stage. ..... 11

D. The FAC Plausibly States a Claim Under the Federal Wiretap Act ..... 12

1. The FAC Alleges Interception of the Contents of Plaintiff's Electronic Communications. ..... 12

2. The Wiretap Act Expressly Reaches a Person Who "Procures" Another to Intercept Communications. ..... 12

3. Defendant's Party-Consent Defense Does Not Warrant Dismissal Because the FAC Plausibly Alleges an Independent Criminal or Tortious Purpose. ..... 13

4. A Commercial Motive Does Not Necessarily Foreclose Application of the Crime-Tort Proviso. ..... 14

E. Plaintiff Plausibly States a Claim Under CIPA §§ 638.50–638.51 ..... 15

1. Section 638.51 Is Not Categorically Limited to Traditional Telephone Technology. ..... 15

2. The FAC Alleges "Devices or Processes" That Record or Decode Routing, Addressing, and Signaling Information Beyond Ordinary Website Delivery. ..... 15

3. Defendant's CCPA Harmonization Argument Does Not Establish That the Challenged Conduct Is Exempt From CIPA. ..... 16

4. Neither the Absurdity Doctrine Nor the Rule of Lenity Requires Dismissal. ..... 17

F. The FAC Plausibly Alleges Knowing Access and Use Without Permission Under CDAFA ..... 17

1. CDAFA Broadly Defines "Access," and the FAC Specifically Identifies the Browser, Storage, Input, Output, and Processing Functions Defendant Allegedly Caused. ..... 17

2. Plaintiff's Permission to Access Defendant's Website Did Not Necessarily Authorize the Separate Tracking Conduct Alleged in the FAC. ..... 18

3. Plaintiff's Express Rejection of Cookies and Defendant's Alleged Continued Tracking Plausibly Support Knowing Access Without Permission. ..... 19

4. Defendant's Authorities Requiring Technological Circumvention Do Not Defeat Plaintiff's Strongest § 502 Theories. ..... 19

G. The FAC Plausibly Alleges a Violation of Plaintiff's Right to Privacy Under the California Constitution ..... 20

1. Plaintiff Alleges a Legally Protected Privacy Interest in His Identity- and Family-Related Search Activity and Communications. ....................... 20

2. Plaintiff Plausibly Alleges a Reasonable Expectation That His Search Communications Would Not Be Secretly Recorded and Disclosed to Third Parties. ............................................................ 21

3. Plaintiff's Rejection of Cookies and the Alleged Absence of Meaningful Disclosure Preclude Resolution of Consent as a Matter of Law. .......................................................................................... 21

4. Whether the Alleged Session Recording, Keyboard Capture, Persistent Fingerprinting, and Third-Party Disclosure Were Highly Offensive Is a Contextual Inquiry That Should Not Be Resolved Against Plaintiff on the Pleadings. ........................................................... 22

H. Plaintiff's UCL Claim Survives .................................................................... 23

1. The UCL's Unlawful Prong Survives Because the FAC Plausibly Alleges Predicate Statutory Violations. ..................................................... 23

2. The FAC Independently Alleges Unfair Conduct. ..................................... 23

3. The Availability of Damages Does Not Necessarily Provide an Adequate Remedy for Prospective Cessation or Deletion Relief................ 24

I. At Minimum, Any Dismissal Should Be With Leave to Amend........................... 24

IV. CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026)........ 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 2

*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ........ 14

*Calhoun v. Google, LLC*, 113 F.4th 1141, 1147–49 (9th Cir. 2024) ........ 12

*Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *6 (N.D. Cal. June 9, 2026)7

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069–70 (9th Cir. 2016) ........ 18

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ........ 22

*Foman v. Davis*, 371 U.S. 178, 182 (1962)........ 25

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) ........ 15

*Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025)........ 10

*Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022)........ 24

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–90 (2009)........ 22

*Herzman v. Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) ........ 7

*Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994)........ 20, 22

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088–90 (N.D. Cal. 2015) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99, 601–06 (9th Cir. 2020)... 5, 6, 21

*In re Meta Android Privacy Litigation*, No. 25-cv-04674-RFL, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026)........ 16

*In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106–09 (9th Cir. 2014)........ 8

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022) ........ 12

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018) ........ 2, 3

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)........ 9, 10

*Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857, 863–65 (N.D. Cal. 2026) . 6, 10, 11, 14

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011)........ 23

*Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) .................................................. 2

*Lopez v. Smith*, 203 F.3d 1122, 1127, 1130–31 (9th Cir. 2000) (en banc) .................................... 25

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007) .......................... 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)........................................................ 2

*Magliocca v. United Healthcare Services Inc.*, No. 2:25-cv-3388-WBS-SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026)........................................................................................... 7

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) .......................................... 25

*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962–63 (9th Cir. 2018) ............................ 18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022)...... 13

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)......................................................... 1, 2, 5

*Riganian v. LiveRamp, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025).................................... passim

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004) ...................................... 3

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930–31 (N.D. Cal. 2024) ......................................... 15

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 915–17 (N.D. Cal. 2026) .............................. 4, 6

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024).............................. 11

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020).................................. 24

*Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ............................................. 13

*Torres v. Seatgeek, Inc.*, No. 25-cv-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026)....... 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021)..................................................... 2, 8

*United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ................................................. 18

*Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)........................................................................ 10

*Wiley v. Universal Music Group, Inc.*, 826 F. Supp. 3d 1121, 1132–33 (N.D. Cal. 2025) .......... 4, 7

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951–53 (N.D. Cal. 2024)............................... 9, 10

**Statutes**

18 U.S.C. § 2510(8) ..................................................................................................................... 12

18 U.S.C. § 2511(1)(a) ................................................................................................................... 12

18 U.S.C. § 2511(2)(d).................................................................................................................... 13

18 U.S.C. § 2520(a)......................................................................................................................... 12

Cal. Penal Code § 502(b)(1) ........ 17
Cal. Penal Code § 502(c)(1)(B) ........ 19
Cal. Penal Code § 502(c)(2) ........ 18
Cal. Penal Code § 638.50(b) ........ 15, 16
Cal. Stat. ch. 204, § 2 ........ 15
Civil Code § 1798.175 ........ 16

## I. INTRODUCTION

Defendant's motion depends on recasting the First Amended Complaint into a case it does not plead. This is not an action alleging that an ordinary retailer counted anonymous page views with routine cookies. Plaintiff alleges that he went to a people-search and data-broker service for the distinctly privacy-related purpose of determining what personal information was being exposed about himself and people close to him. During that investigation, he typed and searched his own name, phone number, and address information, as well as names, addresses, and phone numbers relating to his mother, wife, friends, and other family members. FAC ¶¶ 2, 13, 42, 79–83, 116–21. He alleges that, while he was doing so, Defendant caused hidden code to capture and transmit those search communications and keyboard events in real time, deployed session-replay technology and persistent canvas fingerprinting, associated his activity with identifiers, and transmitted information to Microsoft, Google, MaxMind, and other third parties capable of using it for their own purposes. FAC ¶¶ 3–9, 40–50, 79–90. And he alleges that this occurred before meaningful consent and continued notwithstanding his rejection of cookies. FAC ¶¶ 9–12, 48–49, 71–75, 120–22.

That pleaded context matters. Defendant repeatedly describes the allegations as involving "routine, non-substantive and non-sensitive browsing activity," MTD at 3, and invokes *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). But *Popa* did not hold that website tracking categorically fails to cause a concrete privacy injury. It held that the particular plaintiff there had identified no embarrassing, invasive, or otherwise private information when session-replay software recorded her interactions with a pet-supply website, and the Ninth Circuit expressly recognized that materially different circumstances can implicate actionable privacy interests. *Id.* at 791–95. Here, the alleged communication was not merely that Plaintiff viewed a generic webpage. It revealed whom he was investigating on a people-search service, which identity information he submitted, his family-related searches, what he typed while doing so, and the sequence of an investigation undertaken precisely because he was concerned about exposure of personal information. FAC ¶¶ 2, 13, 42, 79–90, 117–21.

Defendant's consent defense also rests on evidence from the wrong period. Plaintiff alleges visits in October–December 2025; counsel describes the Website in July–August 2026. FAC ¶ 116;

Banerjee Decl. ¶¶ 2–3. Those later materials cannot establish what Plaintiff saw, accepted, or experienced during his earlier visits. Judicial notice and incorporation cannot resolve those disputed historical facts against the FAC. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018).

The motion should therefore be denied. At minimum, any defect the Court identifies—particularly as to prospective injunctive standing or a particular statutory theory—should result in leave to amend, not dismissal with prejudice.

## II. LEGAL STANDARD

On a facial Fed. R. Civ. P. 12(b)(1) challenge to Article III standing, the Court accepts the complaint's factual allegations as true and draws reasonable inferences in Plaintiff's favor. Plaintiff must allege an injury in fact that is concrete and particularised, traceable to Defendant, and redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An intangible injury is concrete when it bears a sufficiently close relationship in kind to a harm traditionally recognized as actionable; exact duplication of the historical tort's elements is unnecessary. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021); *Popa*, 153 F.4th at 788–91.

Fed. R. Civ. P. 12(b)(6) similarly requires the Court to accept well-pleaded facts as true and draw reasonable inferences for Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only state a plausible claim; it need not prove the claim or resolve competing factual accounts. Materials outside the pleadings cannot be used to contradict the allegations merely because Defendant attaches them to a dismissal motion. Judicial notice may establish the existence or contents of an appropriate document, but not the truth of reasonably disputed factual assertions within it. *Khoja*, 899 F.3d at 998–1003; *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

## III. ARGUMENT

### A. Defendant Cannot Use 2026 Website Materials to Resolve Disputed Facts Concerning Plaintiff's 2025 Visits and Consent

#### 1. Judicial Notice Does Not Permit the Court to Accept Defendant's Disputed

**Factual Assertions as True.**

Defendant asks the Court to move from a permissible proposition—that certain webpages displayed certain material when counsel captured them in 2026—to a very different one: that Plaintiff necessarily encountered the same disclosures and technological sequence months earlier and therefore knowingly consented to the tracking alleged in the FAC. MTD at 1–3, 13–14. That is precisely the misuse of judicial notice the Ninth Circuit cautioned against in *Khoja*. 899 F.3d at 998–1003. A defendant may not use judicial notice or incorporation "to resolve factual disputes against the plaintiff's well-pled allegations" at the dismissal stage.

Rule 12(b)(1) does not cure the evidentiary mismatch. A factual jurisdictional challenge may permit consideration of extrinsic evidence, but counsel's observations in July and August 2026 do not establish the Website's configuration or Plaintiff's conduct in 2025. Banerjee Decl. ¶¶ 2–3; FAC ¶ 116. Nor should disputed facts concerning the alleged intrusion and consent be resolved through a jurisdictional determination when they are intertwined with the merits. See *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004). For purposes of Rule 12(b)(6), Plaintiff requests exclusion of the declaration's disputed factual account and denial of the RJN insofar as it seeks findings about historical disclosures, assent, or tracker timing. Incorporation of the Website's relevant disclosures does not incorporate counsel's later browsing experience as an undisputed account of Plaintiff's earlier visits. *Khoja*, 899 F.3d at 1002–03.

**2. Defendant's 2026 Website Screenshots Cannot Establish What Plaintiff Encountered During His 2025 Visits.**

Nothing in the declaration establishes that the relevant Website source code, consent-management configuration, disclosures, third-party scripts, script-firing rules, masking settings, or data flows were materially identical during Plaintiff's visits. And a static screenshot could not establish one of the most important disputed facts in any event: whether invisible scripts, event listeners, fingerprinting operations, or outbound third-party requests fired before the banner appeared or before a user's rejection was registered. The FAC specifically alleges that Defendant controlled those technical choices and configured the Trackers to operate pre-consent. FAC ¶¶ 9, 43, 48–49, 82–90, 120–22.

Defendant's own Exhibit A underscores the problem. Its 2026 banner conditions agreement on "clicking 'Accept All Cookies,'" while the depicted preference center offers "Reject All." Ex. A at 2–3. The FAC alleges that Plaintiff chose rejection, not acceptance. FAC ¶¶ 12, 74, 121. And the 2026 screenshot expressly tying a click to agreement with the Privacy Policy appears at the email-entry stage. Ex. A at 5. Plaintiff alleges that he stopped before providing an email address. FAC ¶¶ 117–19. Thus, even if the later Website flow were relevant evidence, it does not establish that Plaintiff affirmatively agreed to the Privacy Policy before the initial search communications the FAC alleges were intercepted.

**3. The FAC's Allegations of Pre-Consent Tracking and Plaintiff's Rejection of Cookies Must Be Accepted as True at the Pleading Stage.**

The operative allegations are direct, not inferential. Plaintiff alleges that the Trackers transmitted information "before" meaningful consent; that Defendant could choose whether to block them until consent; that it instead configured them to remain active; that Plaintiff did not click "Accept All Cookies"; that he rejected cookies; and that the challenged tracking nevertheless occurred. FAC ¶¶ 9, 12, 48–49, 71–75, 120–22.

Those allegations matter across CIPA, CDAFA, constitutional privacy, and Defendant's broader consent theories. Recent decisions applying *Popa* likewise recognize that tracking after an affirmative privacy choice materially changes the analysis because the issue is no longer merely whether a user should expect ordinary website functionality, but whether the alleged collector proceeded after telling the user that tracking could be declined. See *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 915–17 (N.D. Cal. 2026); *Wiley v. Universal Music Group, Inc.*, 826 F. Supp. 3d 1121, 1132–33 (N.D. Cal. 2025).

Consent cannot be resolved by substituting Defendant's later reconstruction for the facts alleged in the FAC.

**B. Plaintiff Has Article III Standing Because the FAC Alleges a Concrete Privacy Injury Materially Different From the Innocuous Tracking in *Popa***

**1. Plaintiff Alleges the Actual Interception and Disclosure of Private**

**Communications, Not a Bare Statutory Violation.**

The historical analogue is intrusion upon seclusion: an intentional interference with a person's private affairs or concerns of a kind that would be highly offensive to a reasonable person. *Popa*, 153 F.4th at 790–92. Plaintiff alleges that BeenVerified deliberately enabled outsiders to acquire the substance of his searches concerning himself and identified relatives and associates, linked those communications to persistent identifiers, and continued the challenged collection despite his rejection of cookies. FAC ¶¶ 42–49, 79–90, 117–22. The asserted injury is the unwanted acquisition and exploitation of those private search communications—not the existence of tracking software or a statutory violation standing alone. Plaintiff need not establish public dissemination to invoke the intrusion analogue. See *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99, 601–06 (9th Cir. 2020). Although a substantive communication is not necessarily private, these allegations plausibly identify both the private affairs investigated and the allegedly intrusive manner of acquisition.

The relevant privacy interest also cannot be reduced to whether a name or phone number might separately be found in a public record. The communication allegedly intercepted was Plaintiff's search itself: that this user, at this time, on a people-search service, chose to investigate this particular person, phone number, address, or family member, through this sequence of searches and inputs. FAC ¶¶ 2, 13, 42, 79–83, 117–21. A datum can be publicly available in one context while a person's confidential decision to search for, combine, or communicate that datum conveys additional private meaning.

**2. *Popa* Is Materially Distinguishable Because the FAC Alleges Identity- and Family-Related Searches, Keyboard Capture, Session Replay, Persistent Fingerprinting, and Third-Party Use.**

The plaintiff in *Popa* alleged that Microsoft's Clarity technology recorded interactions on a pet-products website. In finding no concrete injury, the Ninth Circuit emphasized that she had identified no "embarrassing, invasive, or otherwise private information" and compared the alleged observation to a retail employee watching a shopper navigate a store. 153 F.4th at 791–94. But the court also explained that comparable technology could implicate a materially different privacy harm

in different circumstances—including where the subject matter is sensitive—and distinguished the pervasive personally linked tracking at issue in *In re Facebook*. *Id.* at 793–95.

The distinction is not that this case involves Clarity, keyboard events, or a greater number of trackers; *Popa* itself involved detailed session tracking. The distinction is what the FAC alleges was acquired and under what circumstances. Plaintiff identifies the search subjects and inputs: his own name, telephone number, and address information, and names, addresses, and telephone numbers concerning his mother, wife, friends, and other family members. FAC ¶¶ 42, 79–81, 117–19. He alleges that those search communications were acquired and associated with persistent browser identifiers. FAC ¶¶ 43–45, 84–87. He also alleges two distinct consent failures: collection before meaningful consent and continued tracking notwithstanding his rejection of cookies. FAC ¶¶ 12, 49, 120–22.

Plaintiff does not contend that his subjective reason for visiting BeenVerified, or the Website's business category alone, establishes standing. The objectively asserted privacy interest is in the disclosure of whom he investigated and the substantive searches he communicated, considered together with persistent identification and the alleged disregard of his expressed privacy choice. Those pleaded circumstances—not the technology's label—supply the asserted relationship to intrusion upon seclusion.

### 3. Recent Post-*Popa* Decisions Confirm That More Revealing, Persistent, and Intrusive Tracking Can Establish Concrete Injury.

Post-*Popa* Northern District decisions confirm that *Popa* is contextual, not categorical. In *Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857, 863–65 (N.D. Cal. 2026), the court distinguished *Popa* because the allegations involved persistent, detailed tracking and profiling materially unlike one-site pet-shopping activity. The court rejected an attempt to characterize the alleged surveillance as equivalent to ordinary observation in a store and held the pleaded privacy harm sufficient at the dismissal stage.

*Shah* and *Wiley* support the narrower proposition that an allegedly disregarded privacy choice bears materially on the privacy-injury analysis. *Shah*, 824 F. Supp. 3d at 915–17; *Wiley*, 826

F. Supp. 3d at 1132–33. Neither decision makes an opt-out a substitute for pleading the particular communication, interception, or statutory device required by CIPA; both dismissed CIPA theories for deficiencies in those allegations. Plaintiff addresses those distinct requirements through his pleaded search inputs, browser-level acquisition mechanism, identified recipients, and addressing information. FAC ¶¶ 42–45, 79–90, 103–08, 119–21.

Judge Tigar's decision in *Riganian* is also instructive. There, the Court rejected the proposition that privacy injury must turn on whether each individual datum is independently secret; aggregation, persistence, identification, and the covert manner of collection matter to the privacy analysis. *Riganian v. LiveRamp, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025). The same principle applies here. Defendant's attempt to isolate "names, addresses and phone numbers," MTD at 5, disregards what the FAC says was communicated about those data: who Plaintiff was investigating, his relationship-linked searches, his typing and interaction sequence, and the association of that activity with persistent identifiers.

Defendant's post-*Popa* authorities underscore the need to identify the particular information acquired; they do not establish a technology-based immunity. *Herzman v. Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026), involved dental appointments, but the complaint deliberately omitted the specific information disclosed and relied on conclusory descriptions of protected health and identifying information. Here, the FAC identifies Plaintiff's search subjects, entered identifiers, and alleged third-party transmissions. FAC ¶¶ 42–45, 79–85, 117–21. *Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *6 (N.D. Cal. June 9, 2026), involved hotel-booking information and illustrates that detailed commercial information is not necessarily private. Plaintiff therefore relies not on detail alone, but on the alleged disclosure of his identity-related investigation coupled with persistent identification and disregarded rejection. The same distinction answers Defendant's reliance on *Torres v. Seatgeek, Inc.*, No. 25-cv-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026), and *Magliocca v. United Healthcare Services Inc.*, No. 2:25-cv-3388-WBS-SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026):

Plaintiff identifies the asserted private communication and does not ask the Court to infer concrete injury merely from tracker deployment.

**4. Any Issue Concerning Standing for Prospective Injunctive Relief Does Not Defeat Plaintiff's Standing to Seek Relief for Completed Interceptions.**

Defendant separately argues that Plaintiff does not allege a sufficiently imminent future visit to establish standing for a forward-looking injunction. MTD at 6. That argument, even if accepted, would not eliminate Article III jurisdiction over claims for relief addressing completed interceptions and injuries. Standing is remedy-specific; a limitation on one form of prospective relief does not erase an established injury from past conduct. See *TransUnion*, 594 U.S. at 431–39.

Plaintiff's deletion theory is distinct from an injunction governing a hypothetical future visit. The FAC alleges storage and use of communications and persistent identifiers and requests deletion of unlawfully collected information. FAC ¶¶ 44, 84, 87, 131. Those allegations support Plaintiff's request to address an ongoing condition only to the extent they plausibly establish information still retained or used and relief that BeenVerified can provide. A deletion prayer or a technology's capacity for persistence does not independently establish that condition. If the Court requires more specific allegations identifying the information presently retained, the continuing use, BeenVerified's control over it, or a concrete intended return, Plaintiff requests leave to allege any additional facts supportable under Rule 11. Any deficiency in prospective standing does not eliminate standing to seek damages for completed injuries.

**C. The FAC Plausibly Alleges a Violation of CIPA § 631**

**1. Plaintiff's Search Queries and Keyboard Inputs Constitute the "Contents" of His Communications.**

For section 631(a)'s second clause, the relevant distinction is between the substance of a communication and record information describing its transmission. *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106–09 (9th Cir. 2014). The FAC alleges acquisition of Plaintiff's actual search requests, including names, telephone numbers, and addresses entered as the objects of people-search and reverse-lookup queries. FAC ¶¶ 4, 42, 79–85, 119–21. A telephone number identifying whom to search conveys the substance of the request; it does not merely route the communication.

Defendant's reliance on cases concerning account identifiers, technical headers, or generic browsing therefore does not answer the pleaded search-text theory. MTD at 7. *Zynga* itself distinguishes basic identifying information from search terms communicating a user's request. 750 F.3d at 1108–09. Nor does Plaintiff's refusal to provide an email address, purchase a subscription, or obtain results negate the substantive request he already communicated. FAC ¶¶ 81, 119. The intercepted contents alleged here are the search inputs, not an unviewed report.

**2. The FAC Plausibly Alleges Contemporaneous Interception While Plaintiff's Communications Were in Transit.**

Under *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002), interception of an electronic communication requires acquisition contemporaneous with transmission rather than later retrieval from electronic storage. Plaintiff pleads that requirement expressly and factually. He alleges that Trackers registered event listeners in his browser, reacted to his typing and clicks in real time, and transmitted event data at the moment of—or within milliseconds or seconds of—the underlying activity. FAC ¶¶ 9, 42–43, 82–85. He further alleges that the communications were acquired while being sent from or received at his browser, rather than retrieved later from an archival store. *Id.* ¶ 43.

Judge Tigar has already rejected an effort to convert the "in transit" inquiry into an artificial requirement that acquisition occur before a communication first reaches any technical destination server. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951–53 (N.D. Cal. 2024). The relevant question is whether the challenged acquisition occurred while the communication was in transmission to its intended recipient, not whether a defendant can identify some intermediate technical endpoint. See also *Riganian*, 791 F. Supp. 3d at 1091–92 (treating allegations concerning event listeners and real-time acquisition as sufficient to present a factual question rather than one resolvable against the plaintiff on the pleadings).

The allegation is not merely that collection occurred during the same browsing session. Paragraphs 43 and 85 allege acquisition while Plaintiff's search communications were being transmitted, through scripts operating in his browser as he submitted the searches, rather than later

retrieval of stored records. FAC ¶¶ 43, 85. That distinction satisfies the pleading requirement identified in *Konop*, 302 F.3d at 878, and *Yockey*, 745 F. Supp. 3d at 951–53. Locally generated keyboard events, standing alone, need not establish interception of a transmitted electronic communication; Plaintiff principally relies on the alleged contemporaneous acquisition of submitted search communications.

**3. The FAC Plausibly Alleges That Independent Third Parties Acquired Plaintiff's Communications.**

Defendant invokes the principle that a party to a communication ordinarily cannot "eavesdrop" on its own conversation. See *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); MTD at 6–7. Plaintiff need not contest for present purposes that Defendant itself was an intended recipient of his search requests. The FAC alleges a different and independently sufficient theory: Microsoft, Google, MaxMind, and other entities were not intended recipients of Plaintiff's search communications, received them through code Defendant embedded, and possessed the technical ability to process, retain, correlate, replay, analyze, or use the information for purposes independent of merely carrying Plaintiff's message to Defendant. FAC ¶¶ 40–50, 64–75, 86–90.

A vendor's ability to use information independently bears on whether it is merely the operator's recording tool, but capability alone does not establish an interception. See *Krzyzek*, 817 F. Supp. 3d at 867. In *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (unpublished memorandum), the court affirmed summary judgment because evidence that Salesforce could read messages did not establish that it read or attempted to read them. Here, the FAC alleges actual conduct: Microsoft captured and transmitted Plaintiff's session events and processed them into behavioral records, and Google received search-submission activity through the pleaded integration. FAC ¶¶ 44–45, 85, 87. Those allegations—not a vendor's abstract technical capacity—support the claimed interception. Plaintiff need not establish that every listed vendor received every category of information for the pleaded Microsoft- and Google-based theories to proceed.

**4. Defendant's Intentional Installation and Configuration of the Trackers Plausibly**

**Establishes Liability Under § 631(a)'s Express Aiding Clause.**

Section 631(a) does not stop with direct interception. Its fourth clause expressly imposes liability on a person who aids, agrees with, employs, or conspires with another to perform the prohibited conduct. Judge Tigar has recognized the distinct statutory avenues created by § 631(a), including its express aiding provision. *Riganian*, 791 F. Supp. 3d at 1091–92.

The FAC alleges far more than that Defendant happened to operate a website on which third-party software appeared. It alleges that Defendant deliberately selected the Trackers; embedded and authorised their JavaScript; configured accounts and container IDs; selected where the scripts would fire; possessed the ability to mask fields and gate execution on consent; caused users' browsers to contact third-party endpoints; and received analytical, fraud-prevention, advertising, replay, and commercial benefits from those integrations. FAC ¶¶ 40–50, 64–75, 88–90. Those allegations plausibly support knowledge and intentional assistance even under decisions requiring more than negligent facilitation. *Krzyzek*, 817 F. Supp. 3d at 865–67.

Even assuming the knowledge-and-intent requirement Defendant derives from *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024), the FAC supplies more than negligent facilitation. BeenVerified allegedly knew the Trackers' collection functions, controlled whether transmission preceded consent, and deliberately enabled those functions notwithstanding the absence of permission. FAC ¶¶ 48–49, 88–90. Defendant's focus on paragraph 146 disregards those incorporated allegations. The alleged intentional assistance to the identified third-party acquisition supports the fourth-clause theory without requiring the Court to decide whether every statutory verb carries the same criminal-conspiracy elements.

**5. Defendant Cannot Establish Consent as a Matter of Law at the Pleading Stage.**

CIPA's relevant provision requires consent of all parties. Whatever disclosures might ultimately support a consent defence, the FAC alleges that Plaintiff did not agree to the challenged conduct before it occurred. FAC ¶¶ 9–12, 71–75, 120–22. It further alleges that the banner described "cookies" in general terms but did not disclose session replay, keyboard-event capture, persistent

canvas fingerprinting, transmission of substantive people-search communications to the identified third parties, or their alleged independent uses. FAC ¶¶ 11, 72–73, 122.

Consent may be express or implied, but it must be actual and extend to the particular conduct challenged, assessed from the perspective of a reasonable user. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147–49 (9th Cir. 2024). Plaintiff alleges that he rejected cookies and that the disclosed navigation, usage-analysis, and marketing purposes did not notify him that his substantive searches would be recorded and transmitted for independent third-party use. FAC ¶¶ 11–12, 72–75, 121–22. The issue is therefore the scope of the disclosed conduct, not whether a technology technically uses a cookie. Timing independently matters: later assent cannot retroactively authorize an earlier interception. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022) (unpublished memorandum). Defendant's later screenshots establish neither actual prior consent nor its scope during Plaintiff's visits.

### D. The FAC Plausibly States a Claim Under the Federal Wiretap Act

#### 1. The FAC Alleges Interception of the Contents of Plaintiff's Electronic Communications.

The Wiretap Act defines "contents" in substance-and-meaning terms, and the same distinction discussed above applies. See 18 U.S.C. § 2510(8); *In re Zynga*, 750 F.3d at 1106–07. Plaintiff's actual search terms, names, phone numbers and addresses entered as search requests, and typed form inputs convey substantive meaning. FAC ¶¶ 4, 42, 79–85, 119–21.

Defendant's cases involving technical identifiers or record information therefore do not dispose of the federal claim. Plaintiff does not contend that every IP address, cookie identifier, or routing field is "content." The FAC pleads content and non-content fields separately and invokes different statutes accordingly.

#### 2. The Wiretap Act Expressly Reaches a Person Who "Procures" Another to Intercept Communications.

18 U.S.C. § 2511(1)(a) expressly prohibits intentionally procuring another person to intercept a communication. Plaintiff invokes that statutory language, not freestanding common-law aiding liability. But procurement is not the only pleaded basis for civil liability. 18 U.S.C. § 2520(a)

authorizes an action against a person who engaged in the prohibited interception, disclosure, or intentional use, and the FAC alleges BeenVerified's own participation in those activities. FAC ¶¶ 44, 48–49, 88–92, 161–63.

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088–90 (N.D. Cal. 2015), rejected allegations that amounted to providing or installing the means of interception without sufficiently alleging the defendants' own intentional acquisition or other prohibited conduct. The allegations here extend beyond software installation: BeenVerified allegedly selected and controlled the challenged collection, obtained resulting session records, and intentionally disclosed and used the acquired information for its own purposes. FAC ¶¶ 44, 48–49, 88–90, 162–63. The disclosure and use theories remain dependent on an unlawful underlying interception and the required knowledge; they are not independent substitutes for those elements. Read together, however, the allegations support direct statutory participation and intentional use, rather than liability based solely on assistance to another actor.

**3. Defendant's Party-Consent Defense Does Not Warrant Dismissal Because the FAC Plausibly Alleges an Independent Criminal or Tortious Purpose.**

The federal consent rule differs materially from CIPA and should be analyzed separately. Under 18 U.S.C. § 2511(2)(d), interception ordinarily is not unlawful where one party has given prior consent. Thus, Plaintiff's own lack of consent alone does not answer Defendant's federal party-consent defense.

The proviso applies only when the interception was undertaken with an independent criminal or tortious purpose existing at the time of interception. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022). It is insufficient merely to allege that the interception also violated CIPA, or that some later conduct became tortious. Plaintiff must plausibly allege that the intended use of the acquired communications was itself independently criminal or tortious.

The pleaded independent object is the subsequent association and exploitation of Plaintiff's private search communications through persistent identifiers and third-party profiling,

notwithstanding the limits on permission he expressed. FAC ¶¶ 70, 84, 87–91, 121, 183, 189, 206–10. Those allegations describe an intended use of acquired information beyond the act of recording: creating identifiable behavioral records and making the communications available for the challenged downstream uses. The alleged constitutional privacy invasion and unauthorized data use supply the asserted independent wrongs; the bare proposition that the recording also violated CIPA does not. The FAC further alleges that these uses were intended functions of the architecture BeenVerified selected and configured, supporting the required contemporaneous purpose. FAC ¶¶ 48–49, 88–90.

Judge Tigar's analysis in *Riganian* is particularly instructive. The Court held that allegations that interception was undertaken to associate information with identity profiles and prepare or exploit it for additional commercial uses plausibly invoked the crime-tort proviso at the pleading stage. 791 F. Supp. 3d at 1090–91. *Krzyzek* likewise declined to dismiss where the alleged interception furthered an independently tortious privacy invasion. 817 F. Supp. 3d at 868–69.

#### 4. A Commercial Motive Does Not Necessarily Foreclose Application of the Crime-Tort Proviso.

Plaintiff does not contend that earning revenue, performing analytics, or delivering advertisements is independently tortious. Defendant's authorities reject reliance on a commercial objective without a sufficiently alleged independent wrong. MTD at 11–12. But *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021), recognized that associating acquired data with existing user profiles without consent could supply the independent privacy and computer-access violations required by the proviso. This Court likewise rejected treating commercial gain as categorically inconsistent with an independently tortious purpose. *Riganian*, 791 F. Supp. 3d at 1090–91. Plaintiff's theory rests on the intended, allegedly unauthorized association and downstream exploitation identified above—not profit alone or the circular assertion that interception is tortious because it is interception. That distinction answers Defendant's reliance on *Zarif* and *Pena* without eliminating Plaintiff's obligation to prove the alleged contemporaneous purpose.

### E. Plaintiff Plausibly States a Claim Under CIPA §§ 638.50–638.51

#### 1. Section 638.51 Is Not Categorically Limited to Traditional Telephone Technology.

Defendant asks the Court to restrict § 638.51 to traditional telephone pen-register equipment. MTD at 8–10. The present statutory text does not impose that limitation. Section 638.50 defines a pen register in terms of a "device or process" that records or decodes dialing, routing, addressing, or signalling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted. Cal. Penal Code § 638.50(b). That technologically neutral language extends beyond a physical box attached to a telephone line.

Judge Tigar recently considered and rejected materially the same telephone-only construction in *Riganian*, 791 F. Supp. 3d at 1093–94. The Court reasoned from the Legislature's use of "device or process" and "electronic communication," and observed that the Legislature knew how to impose telephone-specific limitations when it wished to do so. Other federal decisions have similarly applied the statutory language to modern software processes. See *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023).

Defendant's historical premise is mistaken: although CIPA dates to 1967, §§ 638.50–638.55 were added in 2015, effective January 1, 2016. 2015 Cal. Stat. ch. 204, § 2. The enacted definition expressly includes a "process" and "electronic communication." Cal. Penal Code § 638.50(b). The Superior Court orders cited at MTD 8–9 are contrary trial-level interpretations, not controlling appellate constructions. This Court considered and rejected the telephone-only approach, including the reasoning of *Sanchez*, in *Riganian*, 791 F. Supp. 3d at 1093–94. The statute's actual language and this Court's analysis are more persuasive than inferring an unstated categorical exclusion for internet communications.

#### 2. The FAC Alleges "Devices or Processes" That Record or Decode Routing, Addressing, and Signaling Information Beyond Ordinary Website Delivery.

The FAC also avoids the overbreadth caricature Defendant advances. Plaintiff does not allege that every server log, IP packet, or ordinary process needed to deliver a webpage violates § 638.51. He alleges intentional deployment of specific software processes—including JavaScript, tags, beacons, pixels, event listeners, cookies/storage processes, device fingerprinting, and third-

party network calls—that allegedly record, decode, correlate, and transmit routing, addressing, or signaling information beyond ordinary website delivery. FAC ¶¶ 97–113.

Plaintiff's principal non-content theory concerns the recorded IP addressing information and destination domains accompanying the browser's outgoing requests, and the source or origin information associated with incoming communications. FAC ¶¶ 9, 103–08, 120. The outgoing and incoming theories correspond to the separate definitions in Cal. Penal Code § 638.50(b) and (c). The FAC identifies embedded code, browser requests, and third-party transmissions as the processes through which that information allegedly was recorded; it does not rely solely on the conclusory presence of an IP address.

Plaintiff does not contend that every cookie value, fingerprint, timestamp, or device identifier qualifies merely because it permits retrospective profiling. *In re Meta Android Privacy Litigation*, No. 25-cv-04674-RFL, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026), distinguishes information used to route or signal a communication from identifiers used only to organize information into user profiles. The FAC's allegations concerning actual addressing and origin/destination information supply the former theory. Its substantive search text supports the separate contents claims; Plaintiff does not seek to classify that same substantive text as non-content pen-register information.

**3. Defendant's CCPA Harmonization Argument Does Not Establish That the Challenged Conduct Is Exempt From CIPA.**

Defendant's harmonization argument omits the rest of the statute it invokes. Civil Code § 1798.175 states that the CCPA supplements existing laws concerning consumers' personal information and directs that, where a conflict exists, the law affording greater privacy protection controls. The CCPA's disclosure and opt-out requirements therefore do not create blanket immunity from CIPA's independently defined prohibitions. Nor is CCPA compliance an established fact here: Defendant's assertion that the challenged processes were merely "essential cookies" conflicts with the FAC's allegations of session recording, substantive-search transmission, and continued non-essential tracking despite rejection. FAC ¶¶ 11–12, 44–49, 107–10, 120–22. Enforcing each statute

according to its own elements gives effect to both; treating the CCPA as an implied exemption from § 638.51 does not.

**4. Neither the Absurdity Doctrine Nor the Rule of Lenity Requires Dismissal.**

The statute does not prohibit every receipt of network information. Section 638.51(b) permits qualifying communication-service providers to use covered processes for specified operational and protective purposes and with user consent. Plaintiff does not challenge conduct actually falling within those exceptions. His claim concerns additional recording and third-party transmissions allegedly undertaken for the independent tracking and profiling described in the FAC. FAC ¶¶ 107–10. Labeling a script "essential" or "fraud prevention" does not establish that every challenged use satisfies a statutory exception, particularly where Plaintiff alleges that he never reached a payment page. FAC ¶ 119. The relevant inquiry is the provider, process, information, and purpose—not whether a website uses some legitimate security technology.

Nor does lenity authorize dismissal merely because litigants dispute how a technologically neutral statute applies to modern software. Judge Tigar rejected the same basic lenity argument in *Riganian*, holding that the statutory language did not present the sort of grievous ambiguity necessary to invoke the doctrine against the pleaded software-based pen-register theory. 791 F. Supp. 3d at 1093–94. Defendant identifies disagreement among trial courts; that is not a substitute for demonstrating the requisite statutory ambiguity after application of ordinary interpretive tools.

**F. The FAC Plausibly Alleges Knowing Access and Use Without Permission Under CDAFA**

**1. CDAFA Broadly Defines "Access," and the FAC Specifically Identifies the Browser, Storage, Input, Output, and Processing Functions Defendant Allegedly Caused.**

CDAFA broadly defines "access" to include gaining entry to, instructing, communicating with, storing data in, retrieving data from, or otherwise using resources of a computer, system, or network. Cal. Penal Code § 502(b)(1). The FAC does not merely allege in conclusory fashion that Defendant "accessed" Plaintiff's laptop. It identifies the alleged operations: executable scripts and event listeners running in Plaintiff's browser; reads and writes to cookies, local storage, and session

storage; access to browser/device characteristics; canvas-rendering operations; capture of keyboard inputs; processing of event data; use of CPU, memory, bandwidth, battery, and storage; and transmission of resulting data to third parties. FAC ¶¶ 3–9, 40–49, 166–99.

For the pleaded subsections, the FAC specifically alleges knowing access and use of data, causing third-party access, and providing the means by which such access occurred. FAC ¶¶ 179–95. That is materially more detailed than a bare allegation that a website placed a conventional cookie.

**2. Plaintiff's Permission to Access Defendant's Website Did Not Necessarily Authorize the Separate Tracking Conduct Alleged in the FAC.**

Defendant's theory equates Plaintiff's decision to request a webpage with unlimited permission for whatever executable tracking code Defendant chose to send into his browser. MTD at 12–13. CDAFA does not support such an all-or-nothing conception of permission.

Cal. Penal Code § 502(c)(2) distinguishes knowing access from the subsequent taking, copying, or use of data without permission; it does not simply import the CFAA's unauthorized-access formulation. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). That distinction does not make every disapproved method actionable. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962–63 (9th Cir. 2018), rev'd on other grounds, 586 U.S. 334 (2019), rejected liability where the defendant was authorized to obtain the data but used a prohibited automated method. Here, Plaintiff alleges that the challenged copying and third-party use themselves lacked permission, not merely that BeenVerified used an objectionable method to obtain data it was authorized to take. FAC ¶¶ 180–85. His express rejection reinforces that distinction. The revocation analysis in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069–70 (9th Cir. 2016), is analogous, although the cease-and-desist notice and technical blocking there differ from the consent-interface allegations here.

Here, Plaintiff alleges permission to load Defendant's public webpages and transmit his intended search requests. FAC ¶ 180. He alleges that he did not grant permission to record keyboard events, replay his session, persistently fingerprint his device, or transmit his communications and

identifiers to independent third parties for the challenged uses. FAC ¶¶ 180–82. At minimum, the scope of the permission is plausibly disputed.

**3. Plaintiff's Express Rejection of Cookies and Defendant's Alleged Continued Tracking Plausibly Support Knowing Access Without Permission.**

The allegation of rejection materially strengthens the CDAFA claim. Plaintiff alleges that Defendant itself presented a mechanism by which a user could refuse tracking categories; Plaintiff exercised that choice; Defendant nevertheless caused the challenged code and processes to continue. FAC ¶¶ 12, 74, 120–22, 179–82.

That pleaded fact distinguishes a user who simply visited an openly functioning website from a user who affirmatively communicated a restriction and alleges that the website disregarded it. *Power Ventures* demonstrates that an express limitation or revocation can matter to whether subsequent computer access occurs "without permission." 844 F.3d at 1067–69.

The FAC separately alleges Defendant's knowledge: Defendant selected and configured the relevant code, maintained the consent manager, decided which technologies would be consent-gated, and had the technical ability to disable or mask the challenged collection. FAC ¶¶ 48–49, 89, 181–82. Those facts plausibly support knowing conduct.

**4. Defendant's Authorities Requiring Technological Circumvention Do Not Defeat Plaintiff's Strongest § 502 Theories.**

*Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026), does not support dismissal of every CDAFA theory. It distinguished allegations that trackers existed on the defendant's website from allegations that they accessed data on the plaintiff's computer, while allowing a Cal. Penal Code § 502(c)(1)(B) theory. Here, the FAC identifies operations within Plaintiff's browser: reading and writing storage values, capturing input events, generating canvas outputs, and transmitting data obtained through those processes. FAC ¶¶ 9, 46, 83–85, 179–86. Those allegations address the local-device deficiency Defendant identifies. They must be evaluated as allegations, not as proof that every listed tracker operated during every visit.

The subsections also require separate application. Section 502(c)(2) concerns the alleged taking and use of Plaintiff's data; subsection (c)(1)(B) concerns the alleged knowing use of data and

computer resources to wrongfully obtain data or economic benefit; subsection (c)(4) concerns the alleged addition or alteration of stored data and software; and subsections (c)(6) and (c)(7) concern the alleged provision of access and causing access. FAC ¶¶ 183–95. Plaintiff alleges awareness of the lack of permission through BeenVerified's control of the consent mechanism and continued operation despite rejection, not merely through the existence of a commercial benefit. FAC ¶¶ 48–49, 181–82. The FAC separately alleges loss of device resources and wrongful exploitation of data. FAC ¶¶ 187–91. Those allegations require analysis under § 502(e)(1), not an assumption that ordinary webpage delivery itself constitutes damage.

At minimum, Defendant has not shown that amendment would be futile as to any subsection the Court considers insufficiently pleaded.

### G. The FAC Plausibly Alleges a Violation of Plaintiff's Right to Privacy Under the California Constitution

#### 1. Plaintiff Alleges a Legally Protected Privacy Interest in His Identity- and Family-Related Search Activity and Communications.

California's constitutional privacy claim requires a legally protected privacy interest, a reasonable expectation of privacy under the circumstances, and a sufficiently serious invasion. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). Those questions are contextual rather than reducible to a categorical rule that publicly available data can never participate in a private communication.

Plaintiff's alleged interest is not that his name, an address, or a telephone number must remain unknown to the world. It is privacy in the substantive searches he communicated concerning himself and people close to him, the recorded sequence of those searches, and their association with persistent browser identifiers. FAC ¶¶ 42–45, 79–85, 117–22. Paragraph 83 additionally alleges keyboard-event capture extending beyond final submitted forms, but Plaintiff's claim does not depend on assuming an unidentified sensitive statement that he actually typed and deleted. The specifically alleged submitted search communications provide the principal factual basis for the asserted privacy interest.

Judge Tigar rejected a similarly atomized view of privacy in *Riganian*, explaining that the aggregation, persistence, and manner of collection can implicate privacy even when individual data points viewed in isolation are less sensitive. 791 F. Supp. 3d at 1086–88. The FAC's people-search context makes that principle particularly apt.

**2. Plaintiff Plausibly Alleges a Reasonable Expectation That His Search Communications Would Not Be Secretly Recorded and Disclosed to Third Parties.**

A person who communicates a search request to Defendant necessarily expects Defendant to receive that request. It does not follow, as a matter of law, that the person thereby expects independent third parties to record the session, receive keyboard events, create persistent device fingerprints, and process the communication for their own alleged commercial purposes.

The Ninth Circuit's privacy cases instruct courts to consider not simply whether information was exposed to one recipient, but the nature of the information, the manner and extent of collection, the entities receiving it, and surrounding social norms. *In re Facebook Internet Tracking Litigation*, 956 F.3d at 601–06. Judge Tigar applied those considerations in *Riganian*, 791 F. Supp. 3d at 1086–88.

Here the relevant context includes the nature of the Website itself. Plaintiff alleges that he went to a people-search and data-broker service specifically because he was concerned about what personal information was being exposed. FAC ¶¶ 13, 117–18. Secretly transmitting the resulting privacy investigation to additional third parties, if proven, is not analogous to a customer simply being visible to the proprietor of a physical shop.

**3. Plaintiff's Rejection of Cookies and the Alleged Absence of Meaningful Disclosure Preclude Resolution of Consent as a Matter of Law.**

Consent is Defendant's principal answer to reasonable expectation. MTD at 13–14. But the FAC alleges no such consent. Plaintiff allegedly rejected cookies; received no separate disclosure concerning session replay, key-event capture, fingerprinting, or the challenged independent third-party uses; and was tracked before meaningful consent in any event. FAC ¶¶ 9–12, 71–75, 120–22, 203–10.

The later 2026 materials cannot erase those allegations. And even those materials distinguish between acceptance and rejection rather than showing automatic agreement to all tracking upon entry. Ex. A at 2–3.

Recent decisions applying California privacy principles after *Popa* treat an alleged decision to override an affirmative privacy choice as highly relevant to both reasonable expectations and offensiveness. *Shah*, 824 F. Supp. 3d at 915–17; *Wiley*, 826 F. Supp. 3d at 1132–33. Whether Defendant's actual 2025 disclosures were sufficient, whether Plaintiff saw them, and what tracking occurred before and after his rejection are factual questions, not grounds for dismissal.

**4. Whether the Alleged Session Recording, Keyboard Capture, Persistent Fingerprinting, and Third-Party Disclosure Were Highly Offensive Is a Contextual Inquiry That Should Not Be Resolved Against Plaintiff on the Pleadings.**

The seriousness of a privacy invasion depends on "the degree and setting of the intrusion," the defendant's motives and objectives, and countervailing interests. *Hill*, 7 Cal. 4th at 37; see *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–90 (2009). The common-law intrusion inquiry similarly asks whether the conduct, in context, would be highly offensive to a reasonable person.

Defendant's cited factors favor evaluating the pleaded combination rather than isolating an IP address or an advertisement. As to purpose, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), does not make routine marketing highly offensive merely because an address was obtained deceptively; Plaintiff instead alleges recording and third-party exploitation of substantive search communications despite rejection. As to scope, the FAC alleges repeated visits, event-level recording, and persistent association, but Plaintiff does not claim the internet-wide surveillance alleged in *Facebook*. FAC ¶¶ 44, 84–87, 116, 120–22. As to sensitivity, the asserted private matter is the identity-related investigation communicated through the searches—not an unpleaded medical condition, financial record, or payment transaction. These facts must be assessed together under *Hill*, 7 Cal. 4th at 35–37. Neither targeted advertising alone nor secrecy alone supplies the claim; the alleged combination plausibly exceeds the routine commercial conduct on which Defendant relies.

### H. Plaintiff's UCL Claim Survives

#### 1. The UCL's Unlawful Prong Survives Because the FAC Plausibly Alleges Predicate Statutory Violations.

The UCL's unlawful prong borrows violations of other laws and makes them independently actionable as unfair competition. Because the FAC plausibly alleges violations of CIPA, the Wiretap Act, and CDAFA for the reasons above, the derivative "unlawful" theory survives as well. FAC ¶¶ 215–24.

Survival of a predicate defeats Defendant's derivative-failure argument, but it does not dispense with the UCL's separate standing and equitable-remedy requirements. Those requirements must be assessed independently rather than inferred from the survival or dismissal of another statutory claim.

Section 17204 also requires loss of money or property caused by the challenged practice; a concrete privacy injury alone does not necessarily satisfy that additional requirement. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011). Plaintiff does not allege a purchase or subscription overpayment. His pleaded property-loss theory concerns the unauthorized consumption of his device and network resources and the alleged loss of economic value and control of his data. FAC ¶¶ 187–91, 221–22. Plaintiff does not equate Defendant's commercial benefit, standing alone, with his own economic loss. If the Court finds the current resource- or data-loss allegations insufficiently specific, Plaintiff requests leave to amend with any supportable facts establishing an actual economic deprivation and causation.

#### 2. The FAC Independently Alleges Unfair Conduct.

The UCL claim is not limited to statutory borrowing. The FAC alleges an independently unfair course of conduct: presenting consumers with privacy controls while allegedly causing hidden session recording, keyboard-event capture, fingerprinting, and third-party transmissions to operate before meaningful consent and notwithstanding Plaintiff's rejection choice. FAC ¶¶ 217–20.

The alleged unfairness is tied to California's declared privacy policies and to a concrete imbalance between the asserted utility of ordinary website operation and the alleged harm from

undisclosed recording and third-party use after rejection. FAC ¶¶ 217–20. See *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007). Plaintiff does not challenge analytics categorically; he challenges the alleged disregard of a communicated privacy restriction while capturing and exploiting substantive search activity. That theory is distinct from the unlawful prong, although it remains subject to the UCL's separate standing and remedy requirements.

**3. The Availability of Damages Does Not Necessarily Provide an Adequate Remedy for Prospective Cessation or Deletion Relief.**

Plaintiff must establish the inadequacy of legal remedies to obtain equitable relief in federal court. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020); *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022). Plaintiff does not seek to duplicate an adequate damages recovery through restitution. His distinct asserted basis for equitable relief is cessation or deletion directed at an ongoing condition that damages cannot stop or undo. FAC ¶¶ 131, 224 & Prayer ¶ 8. That theory nevertheless requires adequately pleaded prospective standing and facts supporting the ongoing condition; the availability of a deletion remedy in the abstract is insufficient.

If the Court concludes that no adequately pleaded equitable remedy remains, Plaintiff requests leave to amend the UCL allegations to the extent additional facts can truthfully cure the deficiency. A dismissal for lack of equitable jurisdiction should be without prejudice rather than an adjudication on the merits. *Guzman*, 49 F.4th at 1313–14. Plaintiff's surviving damages claims under other statutes would remain independently actionable even if the UCL claim requires amendment.

**I. At Minimum, Any Dismissal Should Be With Leave to Amend**

Defendant requests dismissal with prejudice even though the FAC contains extensive factual allegations and many of Defendant's objections concern matters capable of clarification—future standing, the precise scope of third-party use, a particular CDAFA subsection, or the independent purpose supporting the Wiretap Act's crime-tort proviso. MTD at 15.

That request is inconsistent with the strong federal policy favoring amendment. Leave should be freely given absent undue delay, bad faith, prejudice, repeated failure to cure, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Ninth Circuit, dismissal without leave is improper unless it is clear that the complaint could not be saved by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127, 1130–31 (9th Cir. 2000) (en banc).

Defendant has not established that every identified deficiency is incurable. Plaintiff requests leave to clarify, where supported by facts, the particular communications acquired, vendor-specific conduct, scope of permission, independently intended uses, cognizable loss, and basis for prospective relief. Plaintiff does not ask the Court to assume additional facts absent from the FAC. Any dismissal for lack of Article III jurisdiction should be without prejudice; a jurisdictional determination is not an adjudication of the merits. See *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

## IV. CONCLUSION

The First Amended Complaint alleges a privacy investigation, not routine retail browsing. Plaintiff alleges that while using a people-search service to determine what personal information was being exposed about himself and people close to him, Defendant caused hidden technologies to capture substantive search communications and keyboard events, record session activity, generate persistent device fingerprints, and transmit information to independent third parties—all before meaningful consent and despite Plaintiff's alleged rejection of cookies. FAC ¶¶ 2–14, 40–50, 64–91, 116–26. Those allegations must be evaluated as pleaded, not replaced by Defendant's description of how its Website operated seven to ten months later.

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. Alternatively, if the Court finds any claim or theory insufficiently pleaded, Plaintiff requests leave to amend rather than dismissal with prejudice.

Dated: September 14, 2026

**POTTER HANDY, LLP**

By: /s/ James M. Treglio

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff