**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERIF SHERIF, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEENVERIFIED, LLC., a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 4:26-cv-01506-JST<br><br>**PLAINTIFF'S CORRECTED OPPOSITION TO DEFENDANT BEENVERIFIED, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date: December 10, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 6 – 2nd Floor<br><br>Hon. Jon S. Tigar |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 1

III. ARGUMENT ..... 2

A. Defendant Cannot Use 2026 Website Materials to Resolve Disputed Facts Concerning Plaintiff's 2025 Visits and Consent ..... 2

B. Plaintiff Has Article III Standing Because the FAC Alleges a Concrete Privacy Injury Materially Different from the Innocuous Tracking in *Popa* ..... 3

1. The Alleged Injury Concerns Private Search Communications, Not Tracking in the Abstract. ..... 3

2. The Cited Decisions Require a Contextual Inquiry, Not Categorical Dismissal. ..... 4

3. Prospective Standing Must Be Assessed Separately from Completed Injuries. ..... 5

C. The FAC Plausibly Alleges a Violation of CIPA § 631 ..... 5

1. Plaintiff Identifies Substantive Contents and Contemporaneous Interception. ..... 5

2. Independent Third-Party Interception and Defendant's Intentional Assistance Are Specifically Alleged. ..... 6

3. The FAC Negates Prior Consent to the Challenged Conduct. ..... 7

D. The FAC Plausibly States a Claim Under the Federal Wiretap Act ..... 7

E. Plaintiff Plausibly States a Claim Under CIPA §§ 638.50–638.51 ..... 9

F. The FAC Alleges Knowing Access and Use Without Permission Under CDAFA ..... 10

G. The FAC Plausibly Alleges a Violation of Plaintiff's Right to Privacy Under the California Constitution ..... 11

H. The UCL Claim Is Not Defeated by Defendant's Derivative and Equitable-Remedy Arguments ..... 12

I. At Minimum, Any Dismissal Should Be With Leave to Amend ..... 13

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026)........ 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 1

*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ........ 8

*Calhoun v. Google, LLC*, 113 F.4th 1141, 1147–49 (9th Cir. 2024) ........ 7

*Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *6 (N.D. Cal. June 9, 2026)5

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069–70 (9th Cir. 2016) ........ 11

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)........ 12

*Foman v. Davis*, 371 U.S. 178, 182 (1962)........ 13

*Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025)........ 6

*Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022)........ 13

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–90 (2009)........ 12

*Herzman v. Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) ........ 4

*Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994)........ 12

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088–90 (N.D. Cal. 2015) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99, 601–06 (9th Cir. 2020)........ 3

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014) ........ 5

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022) 7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018) ........ 2

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)........ 6

*Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857, 863–65 (N.D. Cal. 2026)........ 4, 7, 8

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011)........ 13

*Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) ........ 2

*Lopez v. Smith*, 203 F.3d 1122, 1127, 1130–31 (9th Cir. 2000) (en banc) ........ 14

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007) ........ 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) .......... 1

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) .......... 14

*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962–63 (9th Cir. 2018) .......... 10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) .......... 8

*Popa v. Microsoft Corp.*, 153 F.4th 784, 788–91 (9th Cir. 2025) .......... 1, 3

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1086–88 (N.D. Cal. 2025) .......... passim

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004) .......... 3

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 915–17 (N.D. Cal. 2026) .......... 4

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024) .......... 7

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020) .......... 13

*Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) .......... 8

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021) .......... 1, 5

*United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) .......... 10

*Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) .......... 6

*Wiley v. Universal Music Group, Inc.*, 826 F. Supp. 3d 1121, 1132–33 (N.D. Cal. 2025) .......... 4

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951–53 (N.D. Cal. 2024) .......... 6

**Statutes**

18 U.S.C. § 2510(8) .......... 7

18 U.S.C. § 2511(1)(a) .......... 7

18 U.S.C. § 2511(2)(d) .......... 8

18 U.S.C. § 2520(a) .......... 8

2015 Cal. Stat. ch. 204, § 2 .......... 9

Cal. Civ. Code § 1798.175 .......... 9

Cal. Penal Code § 502(b)(1) .......... 10

Cal. Penal Code § 502(c)(1)(B) .......... 11

Cal. Penal Code § 502(c)(2) .......... 11

Cal. Penal Code § 502(c)(4) .......... 11

Cal. Penal Code § 502(c)(6)–(7) .......... 11

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1

## I. INTRODUCTION

Defendant's motion depends on recasting the First Amended Complaint into a case it does not plead. This is not an action alleging that an ordinary retailer counted anonymous page views with routine cookies. Plaintiff visited a people-search service to investigate what personal information was being exposed about himself and people close to him. He submitted names, telephone numbers, and addresses concerning himself, his mother, wife, friends, and other family members. FAC ¶¶ 79–81, 116–19. While he did so, Defendant allegedly caused hidden code to acquire his search communications contemporaneously with transmission, record session activity, capture keyboard events, associate communications with persistent identifiers, and transmit information to independent third parties. Id. ¶¶ 40–49, 82–90. The challenged tracking began before meaningful consent and continued despite Plaintiff's rejection of cookies. Id. ¶¶ 49, 74, 120–22.

Those allegations require analysis of the communications actually acquired and the circumstances of acquisition—not dismissal under a categorical rule immunizing website tracking. Nor can Defendant establish consent through counsel's account of the Website in July–August 2026 when Plaintiff's visits occurred in October–December 2025. FAC ¶ 116; Banerjee Decl. ¶¶ 2–3. The motion should be denied. Any curable deficiency should result in leave to amend, not dismissal with prejudice.

## II. LEGAL STANDARD

On a facial Fed. R. Civ. P. 12(b)(1) challenge to Article III standing, the Court accepts the complaint's factual allegations as true and draws reasonable inferences in Plaintiff's favor. Plaintiff must allege an injury in fact that is concrete and particularized, traceable to Defendant, and redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An intangible injury is concrete when it bears a sufficiently close relationship in kind to a harm traditionally recognized as actionable; exact duplication of the historical tort's elements is unnecessary. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021); *Popa v. Microsoft Corp.*, 153 F.4th 784, 788–91 (9th Cir. 2025).

Fed. R. Civ. P. 12(b)(6) similarly requires the Court to accept well-pleaded facts as true and draw reasonable inferences for Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint

need only state a plausible claim; it need not prove the claim or resolve competing factual accounts. Materials outside the pleadings cannot be used to contradict the allegations merely because Defendant attaches them to a dismissal motion. Judicial notice may establish the existence or contents of an appropriate document, but not the truth of reasonably disputed factual assertions within it. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

## III. ARGUMENT

### A. Defendant Cannot Use 2026 Website Materials to Resolve Disputed Facts Concerning Plaintiff's 2025 Visits and Consent

Defendant's request for judicial notice conflates what its Website displayed in 2026 with what Plaintiff necessarily encountered months earlier. RJN at 1–2; MTD at 1–3, 13–14. Judicial notice may establish a document's existence or contents, but not the truth of reasonably disputed assertions; incorporation likewise cannot resolve factual disputes against the complaint. *Khoja,* 899 F.3d at 998–1003; *Lee*, 250 F.3d at 689–90. Referring to the Website and its disclosures does not incorporate counsel's later browsing experience as an undisputed account of Plaintiff's visits.

The declaration authenticates screenshots and observations from July 14, August 11, and August 12, 2026. Banerjee Decl. ¶¶ 2–3. It does not establish that the source code, disclosures, consent configuration, script-firing rules, masking, or data flows were materially identical in October–December 2025. Nor can static screenshots establish whether invisible scripts or outbound requests executed before consent or after rejection. The FAC expressly alleges that Defendant controlled those choices and configured the Trackers to operate without permission. FAC ¶¶ 48–49, 88–90, 120–22.

Even the later materials do not establish assent. The depicted banner conditions agreement on clicking "Accept All Cookies," and the preference center offers "Reject All." Banerjee Decl., Ex. A ¶¶ 3, 5. Plaintiff alleges rejection, not acceptance. FAC ¶¶ 74, 121. The explicit Privacy Policy assent language appears at the email-entry stage, which Plaintiff declined to complete. Banerjee Decl., Ex. A ¶ 9; FAC ¶ 119. Links to policies and an opportunity to accept do not establish that Plaintiff accepted the challenged collection before submitting his searches.

Rule 12(b)(1) does not cure this temporal mismatch. Even a factual jurisdictional attack requires relevant evidence, and the disputed intrusion and consent questions are intertwined with the merits. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004). Plaintiff requests exclusion of the declaration's disputed factual account under Rule 12(b)(6) and denial of the RJN insofar as it seeks findings about historical disclosures, assent, or tracker timing. The FAC—not Defendant's later reconstruction—supplies the operative allegations.

**B. Plaintiff Has Article III Standing Because the FAC Alleges a Concrete Privacy Injury Materially Different from the Innocuous Tracking in *Popa***

**1. The Alleged Injury Concerns Private Search Communications, Not Tracking in the Abstract.**

The relevant historical analogue is intrusion upon seclusion: intentional interference with private affairs of a kind highly offensive to a reasonable person. *Popa*, 153 F.4th at 790–92. Plaintiff identifies the particular intrusion: outsiders acquired his searches concerning himself and identified relatives and associates, linked those communications to persistent identifiers, and used the information despite his rejection of cookies. FAC ¶¶ 42–49, 79–90, 117–22. The injury is unwanted acquisition and exploitation of those communications, not merely installation of software or violation of a statute. Public dissemination is not required by the intrusion analogue. See *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99, 601–06 (9th Cir. 2020).

The communication allegedly intercepted was Plaintiff's search itself: that this user, at this time, on a people-search service, chose to investigate this particular person, telephone number, address, or family member. FAC ¶¶ 79–81, 117–19. A datum can be publicly available in one context while a person's confidential decision to search for, combine, or communicate that datum conveys additional private meaning. Defendant's isolation of names and contact information disregards what the searches communicated about Plaintiff's private affairs.

*Popa* involved Clarity's recording of interactions with a pet-supply website and identified no embarrassing, invasive, or otherwise private information. 153 F.4th at 791–94. Its store-clerk analogy addressed those circumstances; the court recognized that tracking can implicate materially

different privacy interests and distinguished the pervasive, personally linked collection in *Facebook*. *Id.* at 793–95. The distinction here is not Clarity, keyboard events, or the number of trackers; *Popa* itself involved detailed session tracking. It is what was acquired and under what circumstances: specific identity- and family-related searches, persistent association, and collection before consent and notwithstanding an affirmative rejection. FAC ¶¶ 42–49, 79–90, 120–22.

Neither Plaintiff's subjective reason for visiting nor the Website's business category alone establishes standing. The pleaded combination does. Defendant allegedly enabled outsiders to record and exploit the very investigation through which Plaintiff sought to understand exposure of his personal information. That interference with his private affairs is qualitatively different from observing ordinary pet shopping. Defendant's intentional deployment of the collection architecture supplies traceability, and damages would redress the completed intrusion. FAC ¶¶ 48–49, 88–91, 153, 165.

**2. The Cited Decisions Require a Contextual Inquiry, Not Categorical Dismissal.**

In *Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857, 863–65 (N.D. Cal. 2026), persistent tracking and detailed profiling distinguished *Popa*. Plaintiff does not claim the same internet-wide surveillance; he relies on the specific searches and circumstances alleged here. Similarly, this Court's analysis in *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1086–88 (N.D. Cal. 2025), rejects evaluating privacy solely by asking whether each isolated datum is secret. Aggregation and manner of collection matter. And *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 915–17 (N.D. Cal. 2026), and *Wiley v. Universal Music Group, Inc.*, 826 F. Supp. 3d 1121, 1132–33 (N.D. Cal. 2025), recognize the significance of disregarding an affirmative privacy choice. Their dismissal of deficient CIPA theories does not negate that privacy analysis; the distinct statutory elements are addressed below.

Defendant's post-*Popa* cases do not eliminate those distinctions. *Herzman v. Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026), involved a complaint omitting the specific information disclosed. Here, the FAC identifies the search subjects, entered identifiers, and alleged transmissions. *Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026

WL 1670136, at *6 (N.D. Cal. June 9, 2026), illustrates that detailed commercial information is not necessarily private. Plaintiff relies on more than detail: disclosure of his identity-related investigation coupled with persistent identification and disregarded rejection. That same distinction answers *Torres* and *Magliocca*, cited at MTD 5 n.3. The technologies' presence alone is not Plaintiff's asserted harm.

**3. Prospective Standing Must Be Assessed Separately from Completed Injuries.**

Defendant's objection that Plaintiff has not alleged an imminent return concerns prospective relief, not standing to recover for completed interceptions. MTD at 6. Standing is remedy-specific. *TransUnion*, 594 U.S. at 431–39. The FAC also requests deletion of unlawfully collected communications and identifiers, a theory distinct from regulating a hypothetical future visit. FAC ¶ 131. Its allegations of stored behavioral records, persistent association, and subsequent use support that request only insofar as they establish continuing injury from retained or used information that Defendant can remedy. Id. ¶¶ 44, 84, 87. Plaintiff does not substitute a deletion prayer or technological capacity for allegations of an ongoing condition. Any need to specify current retention, use, Defendant's control, or an intended return warrants leave to amend; it does not extinguish the damages claims.

**C. The FAC Plausibly Alleges a Violation of CIPA § 631**

**1. Plaintiff Identifies Substantive Contents and Contemporaneous Interception.**

Section 631(a)'s second clause distinguishes the substance of a communication from record information describing its transmission. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014). Plaintiff's names, telephone numbers, and addresses were the objects of people-search and reverse-lookup requests. FAC ¶¶ 42, 79–85, 119. A telephone number identifying whom to search conveys the substance of the request; it does not merely route the communication. *Zynga* distinguishes basic identifying information from search terms communicating a user's request. 750 F.3d at 1108–09. The authorities concerning technical identifiers and ordinary browsing therefore do not defeat this search-text theory. MTD at 7. Nor does failure to purchase a subscription or view

results negate an already-transmitted request. The intercepted contents alleged here are the search inputs, not an unviewed report.

The FAC also alleges acquisition during transmission rather than subsequent retrieval from storage, as required by *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Event listeners in Plaintiff's browser captured his submitted search communications in real time and transmitted the resulting event data to third-party servers. FAC ¶¶ 42–45, 82–85. Paragraphs 43 and 85 expressly distinguish that acquisition from later access to archived records. The allegation is thus not simply that collection occurred within the same browsing session. Nor does it depend on treating every locally generated keyboard event as an intercepted electronic communication; the principal theory concerns submitted searches acquired while being transmitted.

This Court has rejected an artificial "in transit" rule turning solely on whether a communication first reached a technical destination server. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951–53 (N.D. Cal. 2024). It likewise found specific event-listener and real-time acquisition allegations sufficient in *Riganian*, 791 F. Supp. 3d at 1091–92. The FAC pleads that factual mechanism here.

**2. Independent Third-Party Interception and Defendant's Intentional Assistance Are Specifically Alleged.**

Defendant's status as an intended recipient does not answer the fourth-clause theory. See *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). The alleged interceptors were independent vendors, not merely Defendant recording its own communications. Microsoft captured Plaintiff's session events and processed them into behavioral records; Google received search-submission activity through the pleaded integration; and vendors allegedly used communications and identifiers for their own purposes. FAC ¶¶ 44–45, 85–87.

These are allegations of actual acquisition and processing, not capability alone. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025), affirmed summary judgment where evidence that Salesforce could read messages did not establish that it read or attempted to read them. Here, paragraphs 44–45 and 85–87 allege the conduct missing there. See

also *Krzyzek*, 817 F. Supp. 3d at 867. Plaintiff need not establish that every listed vendor received every category of information for the Microsoft- and Google-based theories to proceed.

Section 631(a)'s fourth clause expressly reaches one who aids, agrees with, employs, or conspires with another to perform prohibited conduct. Even assuming Defendant's proposed knowledge-and-intent standard, the FAC alleges more than negligent facilitation. See *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024). Defendant allegedly knew the Trackers' functions, deliberately selected and embedded their code, configured accounts and tag containers, controlled where scripts fired and whether fields were masked, and enabled transmission before consent and despite rejection. FAC ¶¶ 48–49, 88–90. Those allegations plausibly establish knowing, intentional assistance to the identified interception. Defendant's focus on paragraph 146 ignores the incorporated factual allegations and does not justify dismissal under lenity or a narrower construction of the aiding clause. MTD at 7–8.

**3. The FAC Negates Prior Consent to the Challenged Conduct.**

Section 631(a)'s second clause requires all-party consent. Consent must be actual and extend to the particular conduct challenged, assessed from a reasonable user's perspective. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147–49 (9th Cir. 2024). The FAC alleges rejection and identifies what the general cookie notice omitted: session recording, keyboard capture, persistent fingerprinting, transmission of substantive searches, and independent third-party uses. FAC ¶¶ 72–75, 121–22. The question is the scope of disclosed conduct, not whether a technology technically uses cookies. Timing independently matters: later assent cannot retroactively authorize an earlier interception. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022). For the reasons in Section III.A, Defendant's 2026 materials establish neither actual prior consent nor its scope during Plaintiff's visits.

## D. The FAC Plausibly States a Claim Under the Federal Wiretap Act

The submitted search communications constitute "contents" under 18 U.S.C. § 2510(8), and the contemporaneous-acquisition allegations support the federal claim. Defendant's secondary-liability objection does not dispose of the pleaded direct conduct. 18 U.S.C. § 2511(1)(a) expressly

addresses intentional procurement, but Plaintiff does not rely solely on procurement or freestanding common-law aiding liability. 18 U.S.C. § 2520(a) permits suit against a person engaged in prohibited interception, disclosure, or intentional use. Defendant allegedly controlled the collection, obtained resulting session records, and intentionally disclosed and used the acquired information. FAC ¶¶ 44, 48–49, 88–92, 161–63. Those allegations extend beyond merely providing or installing interception software. See *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088–90 (N.D. Cal. 2015). The disclosure and use theories remain dependent on an unlawful underlying interception and the requisite knowledge, which the FAC alleges through Defendant's deliberate configuration and use.

The federal consent rule differs from CIPA: Defendant's consent as a party ordinarily suffices under 18 U.S.C. § 2511(2)(d), so Plaintiff's lack of consent alone is not the answer. The crime-tort proviso instead requires an independently criminal or tortious intended use existing when interception occurred—not simply an interception that also violates CIPA. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022).

The alleged independent object was subsequent association and exploitation of Plaintiff's private search communications through persistent identifiers and third-party profiling notwithstanding his expressed restriction. FAC ¶¶ 70, 84, 87–91, 121, 183, 189, 206–10. Creating identifiable behavioral records and enabling their unauthorized downstream use are alleged privacy and data-use wrongs beyond the act of recording. These were intended functions of the architecture Defendant selected and configured, supporting contemporaneous purpose rather than an unforeseen later misuse. Id. ¶¶ 48–49, 88–90.

In *Riganian*, this Court held that interception to associate information with identity profiles and prepare it for further commercial exploitation plausibly invoked the proviso. 791 F. Supp. 3d at 1090–91. See also *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Plaintiff does not claim that profit, analytics, or advertising is inherently tortious. But a commercial motive does not immunize an independently tortious intended use. *Riganian*, 791 F. Supp. 3d at 1090–91; *Krzyzek*, 817 F. Supp. 3d at 868–69. That distinction answers Defendant's reliance on *Zarif* and

*Pena*, MTD at 11–12, without collapsing the proviso into the circular proposition that interception is tortious because it is interception.

**E. Plaintiff Plausibly States a Claim Under CIPA §§ 638.50–638.51**

Section 638.50(b) defines a pen register as a "device or process" recording or decoding dialing, routing, addressing, or signaling information transmitted through a wire or electronic communication, excluding contents. The statute does not confine covered processes to traditional telephone equipment. This Court rejected that construction, including the reasoning of *Sanchez*, in *Riganian*, 791 F. Supp. 3d at 1093–94. Contrary to Defendant's historical premise, §§ 638.50–638.55 were added in 2015, effective January 1, 2016—not 1967. 2015 Cal. Stat. ch. 204, § 2. The Legislature enacted technologically neutral language; the contrary trial-level orders cited at MTD 8–9 do not supply a controlling telephone-only limitation.

The FAC identifies the relevant processes and information, not merely the presence of tracking. Embedded JavaScript, event listeners, beacons, storage operations, and third-party network requests allegedly recorded IP addressing and destination information accompanying outgoing communications, and source or origin information accompanying incoming communications. FAC ¶¶ 103–08. These allegations correspond to the distinct pen-register and trap-and-trace definitions in § 638.50(b)–(c). The substantive search text supports the contents claims; it is not simultaneously offered as non-content addressing information. Nor must every cookie, fingerprint, or retrospective profiling identifier qualify. The principal theory concerns actual addressing and origin/destination information recorded through the identified browser processes, beyond ordinary webpage delivery. FAC ¶¶ 104–10.

The CCPA supplies no blanket exemption. Cal. Civ. Code § 1798.175 states that the CCPA supplements existing privacy laws and that the law affording greater protection controls in a conflict. Disclosure and opt-out requirements do not nullify CIPA's independently defined prohibitions. Nor is Defendant's assertion of CCPA compliance established: characterizing the processes as "essential cookies" conflicts with allegations of non-essential tracking and third-party transmission despite

rejection. FAC ¶¶ 49, 107–10, 120–22. Enforcing each statute according to its elements gives effect to both.

The same limits answer the asserted absurdity. Section 638.51(b) permits qualifying communication-service providers to use covered processes for specified operational or protective purposes, or with user consent. Plaintiff does not challenge conduct actually within those exceptions or ordinary server operations necessary to deliver content. FAC ¶¶ 109–10. Labels such as "essential" or "fraud prevention" do not establish that every challenged process and independent third-party use qualifies. Finally, lenity requires grievous ambiguity after considering the statutory text, structure, history, and purpose—not merely disagreement among trial courts. *Riganian*, 791 F. Supp. 3d at 1093–94. Defendant's statutory-construction arguments therefore do not defeat the pleaded claim.

**F. The FAC Alleges Knowing Access and Use Without Permission Under CDAFA**

CDAFA defines access to include instructing, causing input or output, processing data with, or communicating with a computer's logical, arithmetic, or memory resources. Cal. Penal Code § 502(b)(1). Plaintiff identifies operations within his browser: executing scripts and event listeners, reading and writing cookies and local/session storage, rendering and extracting canvas data, capturing inputs, and transmitting resulting information through his device and network resources. FAC ¶¶ 40–49, 83–85, 179–86. These allegations answer Defendant's assertion that the FAC identifies only trackers on Defendant's website, not access to Plaintiff's computer. MTD at 13.

Permission to retrieve a webpage is not necessarily permission for the separate taking and exploitation alleged here. Section 502(c)(2) distinguishes knowing access from taking, copying, or using data without permission; it does not simply import an unauthorized-access requirement from federal computer-fraud law. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962–63 (9th Cir. 2018), rev'd on other grounds, 586 U.S. 334 (2019), rejected liability where obtaining the data was authorized but the automated method was prohibited. Here, the alleged copying and third-party use themselves lacked permission.

FAC ¶¶ 180–85. The technological-circumvention cases Defendant cites do not resolve that distinct theory merely because Plaintiff initiated a webpage request.

The FAC also pleads knowledge of the restriction, not simply knowledge that code was executing. Plaintiff rejected cookies through Defendant's own consent interface; Defendant controlled that interface and deliberately permitted the challenged collection before or despite consent. FAC ¶¶ 48–49, 74, 181–82. Those facts answer the knowledge objection grounded in *Tsering*, MTD at 12–13. An express limitation matters to permission, although the consent interface here differs from the cease-and-desist notice and technical barriers in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069–70 (9th Cir. 2016).

The pleaded subsections warrant separate analysis: subsection Cal. Penal Code § 502(c)(2) concerns taking and using data; Cal. Penal Code § 502(c)(1)(B), using data and computer resources to wrongfully obtain money, property, or data; Cal. Penal Code § 502(c)(4), adding or altering stored data and software; and Cal. Penal Code § 502(c)(6)–(7), providing the means of access and causing access. FAC ¶¶ 183–95. *Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *7 (N.D. Cal. May 14, 2026), distinguished tracker deployment from device access while permitting a subsection (c)(1)(B) theory. The local operations pleaded here address the distinction Defendant invokes.

Finally, Plaintiff alleges consumption of his own computing, storage, bandwidth, and battery resources and deprivation of his data's economic value, attributable to unauthorized tracking rather than ordinary delivery. FAC ¶¶ 187–91. Those are the pleaded loss theories under § 502(e)(1); Plaintiff does not rely on a subscription payment or unidentified out-of-pocket mitigation expenditure. Any need for greater specificity must be assessed against those theories, not an assumption that Plaintiff challenges ordinary internet operation.

### G. The FAC Plausibly Alleges a Violation of Plaintiff's Right to Privacy Under the California Constitution

A constitutional privacy claim requires a legally protected interest, a reasonable expectation of privacy, and a sufficiently serious invasion. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th

1, 35–37 (1994). The interest is privacy in Plaintiff's substantive identity- and family-related searches and their association with persistent identifiers, not perpetual secrecy of every name or telephone number. FAC ¶¶ 79–85, 117–22, 203–10. Section III.B explains why publicly available components do not eliminate that distinct interest. *Riganian*, 791 F. Supp. 3d at 1086–88.

A person communicating a search to BeenVerified expects BeenVerified to receive it. It does not follow that the person expects independent vendors to record the session, receive search communications, fingerprint the device, and process the resulting records for their own purposes. The manner and extent of collection, recipients, and surrounding circumstances matter. *Facebook*, 956 F.3d at 601–06. Plaintiff's affirmative rejection and the alleged disclosure omissions reinforce that expectation; the later materials do not establish consent for the reasons in Sections III.A and III.C.3. Defendant's policy-based authorities thus do not establish that Plaintiff knowingly accepted the challenged practices.

The seriousness inquiry likewise considers the combination, not isolated IP addresses or advertisements. *Hill*, 7 Cal. 4th at 37; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–90 (2009). As to purpose, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), does not make ordinary marketing offensive merely because an address was obtained deceptively. Plaintiff instead alleges recording and third-party exploitation of substantive search communications despite rejection. As to scope, he alleges repeated visits, event-level recording, and persistent association—not the internet-wide surveillance in *Facebook*. As to sensitivity, the private matter is the identity-related investigation communicated through his searches, not an unpleaded medical condition or payment transaction. FAC ¶¶ 44, 79–90, 116–22. Assessed together, those allegations plausibly exceed the routine commercial observation Defendant describes and preclude resolving seriousness against Plaintiff on the pleadings.

### H. The UCL Claim Is Not Defeated by Defendant's Derivative and Equitable-Remedy

**Arguments**

The statutory violations addressed above support the UCL's unlawful prong, defeating Defendant's contention that every predicate fails. FAC ¶ 216; MTD at 15. The FAC independently alleges unfair conduct: offering privacy controls while secretly collecting and exploiting substantive search activity before consent and despite rejection. FAC ¶¶ 217–20. That theory is tethered to California's declared privacy policies and the imbalance between ordinary operational utility and the alleged injury from disregarded privacy restrictions. See *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007).

The UCL separately requires lost money or property caused by the challenged practice; concrete privacy injury alone does not suffice. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011). Plaintiff's theory is unauthorized consumption of device and network resources and loss of economic value and control of his data, not a purchase or subscription overpayment. FAC ¶¶ 187–91, 221–22. Defendant's commercial benefit alone is not Plaintiff's economic loss. Should the Court require more specific allegations of actual deprivation and causation, Plaintiff requests leave to amend.

Nor does the availability of statutory damages necessarily resolve the adequacy of legal remedies for the distinct prospective relief sought. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020), and *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022), require an inadequate legal remedy. Plaintiff's cessation and deletion requests concern an ongoing condition that damages cannot stop or undo, not merely duplicative equitable monetary recovery. FAC ¶¶ 131, 224 & Prayer ¶ 8. That basis remains subject to the prospective-standing and ongoing-injury requirements addressed in Section III.B.3. Any deficiency warrants leave to plead supportable facts; dismissal for lack of equitable jurisdiction should be without prejudice. *Guzman*, 49 F.4th at 1313–14. The independent damages claims remain unaffected.

## I. At Minimum, Any Dismissal Should Be With Leave to Amend

Leave should be freely given absent undue delay, bad faith, prejudice, repeated failure to cure, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave is improper

unless the complaint cannot be saved by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127, 1130–31 (9th Cir. 2000) (en banc). Defendant has not established incurability. Plaintiff requests leave, where supported by facts, to clarify particular communications, vendor-specific acquisition and uses, the scope of permission, independently intended wrongful uses, cognizable economic loss, or current retention, control, and other grounds for prospective relief. This request does not ask the Court to assume facts absent from the FAC. Any dismissal for lack of Article III jurisdiction must be without prejudice. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

## IV. CONCLUSION

The First Amended Complaint alleges a privacy investigation, not routine retail browsing, and intentional third-party acquisition and exploitation of substantive searches before consent and despite rejection. Those allegations must be evaluated as pleaded, not replaced by Defendant's later account of its Website. Plaintiff respectfully requests denial of the Motion to Dismiss and the disputed uses of judicial notice. Alternatively, Plaintiff requests leave to amend any deficient claim or theory rather than dismissal with prejudice.

Dated: September 15, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio

By: ______________________________

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff